Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@kraw.com
Jasleen D. Ahuja (SBN 285419)
jahuja@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund and
Board of Trustees of the
GCIU-Employer Retirement Fund

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND, <br><br> Plaintiffs, <br> v. <br><br> PREPRESS GRAPHIC PROFESSIONALS, INC. a Kansas Corporation, <br><br> Defendant. | CASE NO. 2:19-cv-09318 <br><br> **COMPLAINT** <br><br> Collection of Withdrawal Liability pursuant to ERISA Section 4221(b)(1) (29 U.S.C. § 1401(b)(1)) |

## COMPLAINT

Plaintiffs, GCIU-Employer Retirement Fund and Board of Trustees of the GCIU-Employer Retirement Fund, for causes of action against Defendant Prepress Graphic Professionals, Inc., allege as follows:

**JURISDICTION AND VENUE**

1.     This is an action for collection of withdrawal liability, interest, and attorneys' fees incurred by an employer as a result of a withdrawal from a multiemployer pension plan which action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq*.

2.     This court has jurisdiction over this action under ERISA Sections 502(e), 502(f), and 4301(c), 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).

3.     Venue lies in this Court under ERISA Sections 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the GCIU-Employer Retirement Fund ("Fund") is administered in Los Angeles County, California.

**PARTIES**

4.     Plaintiff Fund is a multiemployer pension plan within the meaning of ERISA Sections 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5.     Plaintiff Board of Trustees of the GCIU-Employer Retirement Fund ("Board of Trustees") is comprised of the present trustees who are the named fiduciaries of the Fund within the meaning of ERISA Section 402(a), 29 U.S.C. §1102(a), and is the plan sponsor of the Fund within the meaning of ERISA Sections 3(16)(B)(iii) and 4001(a)(10), 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10).  The Board of Trustees administers the Fund in Los Angeles County, California.

6.     Pursuant to ERISA Sections 502(a)(3) and 4301(a)(1), 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Board of Trustees is authorized, as a named fiduciary, to bring this action on behalf of the Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability. The Fund is also authorized to bring this action in its own name pursuant to a provision contained within Article VIII, Section 18 of the Plaintiff Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of the Fund.  A true and correct copy of the Fund's Trust Agreement is attached hereto as Exhibit 1.

2

COMPLAINT

7.     Defendant Prepress Graphic Professionals, Inc. ("Prepress Graphic") was a corporation organized under the laws of the State of Kansas, and is currently in forfeited status.

8.     At all times relevant to this action, Defendant has been an "employer" as the term is defined by ERISA Section § 3(5), 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

## CLAIM FOR RELIEF

### (Default on Payment Obligation for Withdrawal Liability)

9.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 8 of this Complaint as though fully set forth herein.

10.     During all relevant times, Prepress Graphic was a signatory to a Collective Bargaining Agreement with the GCC/IBT Local 16-C under which it was required to make contributions on behalf of its covered employees. A true and correct excerpt of the Collective Bargaining Agreement is attached hereto as Exhibit 2.

11.     Defendant's obligation to contribute to the Plaintiff Fund ceased in 2010 because it was determined that Defendant ceased to have an obligation to contribute.

12.     As a result, Plaintiffs provided Prepress Graphic with a Notice of Complete Withdrawal Liability and Demand for Payment ("Notice and Demand") via certified mail, dated March 4, 2019, pursuant to ERISA Sections 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382(2) and 1399(b)(1).

13.     The Notice and Demand included a detailed calculation of how the amount of the withdrawal liability assessment was calculated by the actuary and provided Prepress Graphic with a payment schedule for the withdrawal liability assessment in accordance with the requirements of ERISA Section 4219(c), 29 U.S.C. § 1399(c). A true and correct copy of the Notice and Demand with the detailed calculations is attached hereto as Exhibit 3.

14.     The Notice and Demand informed Defendant of their right to make a lump sum present value payment of the entire amount or make payments according to a schedule. In accordance with ERISA and the Fund's Withdrawal Liability Procedures, the Fund's actuary determined that under the payment schedule, Defendant was to make 240 monthly payments of $1,208.99 or $199,912 in a present value lump sum.

15.     Defendant did not exercise its rights under ERISA Section 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A), to ask Plaintiffs to review the assessment, to identify any inaccuracies in the determination of the amount of the assessment, or to furnish any additional information to the Plaintiffs.

16.     Defendant did not initiate arbitration pursuant to ERISA Section 4221(a)(1), 29 U.S.C. § 1401(a)(1) and the time to initiate arbitration has expired.  Consequently, the amounts demanded by the Fund are due and owing pursuant to ERISA Section 4221(b)(1), 29 U.S.C. § 1401(b)(1).

17.     Defendant failed to make any payments to Plaintiffs, and as a result, on June 10, 2019, Plaintiffs provided via certified mail a Notice of Failure to Pay Withdrawal Liability and Demand for Cure ("Demand for Cure") to Prepress Graphic in accordance with ERISA Section 4219(c)(5), 29 U.S.C § 1399(c)(5). A true and correct copy of the Demand for Cure is attached hereto as Exhibit 4.

18.      Defendant has failed to cure the required withdrawal liability payments to the Fund and thus is in default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C.§ 1399(c)(5).

19.     Defendant's failure to make the required withdrawal liability payments to the Plaintiff Fund has caused it to be in default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5).

20.     Defendant's default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5) results in the entire withdrawal liability assessment to be due and owing.

21.     Plaintiffs' actuary has calculated that Defendant's full assessment of withdrawal liability is $421,514.

COMPLAINT

22.   The failure to pay its withdrawal liability subjects an employer to interest, attorney's fees and costs.

23.   By reason of the foregoing, Defendant is indebted to Plaintiffs in the sum of $421,514, plus interest, attorneys' fees, and costs.

WHEREFORE, Plaintiffs request the following relief:

(i)   the past due withdrawal liability payment of $421,514;

(ii)   interest in accordance with the prevailing market rate pursuant to § 4219(c)(6) of ERISA, 29 U.S.C. § 1399(c)(6), on the total amount of unpaid withdrawal liability due and owing from May 3, 2019 until paid;

(iii)   Plaintiffs' reasonable attorneys' fees and costs of the action incurred herein in accordance with the Trust Agreement and ERISA Sections 502(g)(2)(D) and 4301(e), 29 U.S.C. §§ 1132(g)(2)(D) and 1451(e); and

(iv)   Such other legal and equitable relief as the Court deems appropriate.

Dated: October 30, 2019          /s/ Valentina S. Mindirgasova
                                 Valentina S. Mindirgasova
                                 Jasleen D. Ahuja
                                 Kraw Law Group, APC
                                 1017 East Grand Avenue
                                 Escondido, CA 92025
                                 (760) 747-1100
                                 (760) 747-1188
                                 kfennelly@kraw.com
                                 vmindirgasova@kraw.com

                                 Attorneys for Plaintiffs

COMPLAINT

# EXHIBIT 1

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 6



# GCIU-EMPLOYER RETIREMENT FUND

## Trust Agreement

### Effective January 1, 1976

### As Revised and Restated December 1, 2012

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT – 7

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 8

# TABLE OF CONTENTS

PREAMBLE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARTICLE I — DECLARATION OF TRUST  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      1. Name  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      2. Purpose  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      3. Nature of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      4. Duration of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      5. Term of Trust Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARTICLE II — DEFINITIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARTICLE III — THE TRUSTEES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      1. The Board of Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      2. Statutory Capacities of Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      3. Agents for Service of Process  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      4. Number of Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      5. Alternate Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      6. Identity of Present Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

      7. Appointment of Successor Employer Trustees  . . . . . . . . . . . . . . . . . . . . . . . . 6

      8. Appointment of Successor Labor Organization Trustees  . . . . . . . . . . . . . . . 6

      9. Individuals Disqualified from Serving as Trustees  . . . . . . . . . . . . . . . . . . . .6

     10. Acceptance of Appointment by Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     11. Term of Appointment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

     12. Termination of Appointment by Appointing Entity  . . . . . . . . . . . . . . . . . . . 6

     13. Termination of Appointment for Failure to Attend Meetings  . . . . . . . . . . . 7

     14. Termination of Appointment for Conviction of a Crime  . . . . . . . . . . . . . . . .7

     15. Termination of Appointment for Mental Incapacity  . . . . . . . . . . . . . . . . . . .7

     16. Resignation of Appointment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

     17. Vacancies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

     18. Return of Books and Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

— A —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 9

ARTICLE IV — TRUST FUND ADMINISTRATION . . . . . . . . . . . . . . . . . . . . . . . . 8

   1. Manner of Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   2. Constitution of a Quorum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   3. Proxies Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   4. Regular Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   5. Special Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   6. Action without a Formal Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   7. Failure of the Trustees to Agree—Arbitration . . . . . . . . . . . . . . . . . . . . . . . 8

   8. Election of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   9. Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   10. Authorized Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   11. Compensation and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   12. Benefits to Trustees Not Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE V — PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   1. Bargaining Unit Employees Entitled to Participate . . . . . . . . . . . . . . . . . . . 11

   2. Labor Organization Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   3. Non-Bargaining Unit Employees of Participating Employers . . . . . . . . . . . 11

   4. Transferred Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   5. Trust Fund Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   6. Unauthorized Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   7. Sole Proprietors and Partners Ineligible . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   8. Participation of Non-Bargaining Unit Employees . . . . . . . . . . . . . . . . . . . . 12

ARTICLE VI — TRUSTEE RESPONSIBILITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   1. General Duty - Receipt of Contributions and Administration of the Retirement
      Benefit Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   2. Compliance with the Internal Revenue Code . . . . . . . . . . . . . . . . . . . . . . . . 13

   3. Funding Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   4. Basis of Payments to and from Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   5. Application of Trust Fund Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   6. Fiduciary Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

— B —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 10

7. Deposits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

8. Investments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

9. Specifically Permitted Investments  . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10. Title to Investments and Other Assets  . . . . . . . . . . . . . . . . . . . . . . . . .15

11. Fidelity Bond  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

12. Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

13. Annual Audit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

14. Annual Actuarial Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

15. Plan Description  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

16. Annual Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

17. Statements of Accrued Pension Benefits  . . . . . . . . . . . . . . . . . . . . . . . 16

18. Pension Funding Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19. Income Tax Withholding and Reporting  . . . . . . . . . . . . . . . . . . . . . . .17

20. Documents to be Examined or Furnished  . . . . . . . . . . . . . . . . . . . . . . .17

21. Procedure for Establishing Funding Policy  . . . . . . . . . . . . . . . . . . . . .18

22. Payments to Pension Benefit Guaranty Corporation  . . . . . . . . . . . . . . .18

23. Benefit Claim and Review Procedures  . . . . . . . . . . . . . . . . . . . . . . . . .18

ARTICLE VII — ALLOCATION OR DELEGATION OF TRUSTEE
       RESPONSIBILITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

1. Allocation of Responsibilities to Committees  . . . . . . . . . . . . . . . . . . . . 19

2. Delegation of Investment Responsibilities  . . . . . . . . . . . . . . . . . . . . . . 19

3. Delegation of Other Responsibilities  . . . . . . . . . . . . . . . . . . . . . . . . . .20

4. Review of Performance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

ARTICLE VIII - TRUSTEE POWERS  . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

1. General Powers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

2. Specific Powers Discretionary  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

3. Benefit Plan Being Administered  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

4. Amendments to the Benefit Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

5. Means of Providing Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

6. Facility of Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

— C —

7. Administrative Manager . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

8. Banking Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

9. Other Professional and Non-Professional Persons . . . . . . . . . . . . . . . . . . . . 22

10. Obtaining of Necessary Premises, Equipment, and Supplies . . . . . . . . . . . 22

11. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

12. Borrowing Money . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

13. Reserve Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

14. Payment of Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

15. Refunds of Contributions Erroneously Paid . . . . . . . . . . . . . . . . . . . . . . . . . 23

16. Penalties for False or Withheld Information . . . . . . . . . . . . . . . . . . . . . . . . . 23

17. Correction of Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

18. Prosecution of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

19. Defense of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20. Compromise of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

21. Subscription and Participation Agreements . . . . . . . . . . . . . . . . . . . . . . . . . 24

22. Participation in Non-Profit Educational Organizations . . . . . . . . . . . . . . . 24

23. Reciprocity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

24. Mergers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

25. Eligible Rollover Plan Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

26. Interpretation and Application of Documents . . . . . . . . . . . . . . . . . . . . . . . 25

27. Adoption and Implementation of a Funding Improvement Plan and
    Rehabilitation Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

ARTICLE IX — CONTRIBUTIONS AND COLLECTIONS . . . . . . . . . . . . . . . . . . . 27

1. Contribution Reporting Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

2. Contributions Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

3. Contribution Due Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

4. Delinquent Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

5. Audit of Employer Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

6. Liquidated Damages, Attorneys Fees, Interest, and Other Charges . . . . . . . 28

7. Additional Liquidated Damages in Event of Court Judgement . . . . . . . . . . 28

— D —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 12

8. Waiver of Charges  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

9. Protection of Employees in Cases of Delinquency  . . . . . . . . . . . . . . . . . . 28

10. Coordination with Provisions in Collective Bargaining Agreements  . . . . . 29

ARTICLE X — EMPLOYER WITHDRAWAL LIABILITY  . . . . . . . . . . . . . . . . . . 30

1. Calculation and Collection of Employer Withdrawal Liability  . . . . . . . . . 30

2. Determination of Amount of Unfunded Vested Benefits Allocable
   to Withdrawing Employer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

3. Payment of Withdrawal Liability in Monthly Installments  . . . . . . . . . . . . 30

4. Adoption of Administrative Rules and Regulations  . . . . . . . . . . . . . . . . . . 30

5. Notice of Potential Withdrawal Liability  . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ARTICLE XI — BENEFIT CLAIM, HEARING AND ARBITRATION
            PROCEDURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

1. Hearings Required  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

2. Requests for Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

3. Conduct of Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

4. Hearing Rules  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

5. Arbitration - Mandatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

6. Benefit Claim and Review Procedures for a Participating Employee or
   Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

7. Sole and Exclusive Remedies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

ARTICLE XII — LIMITATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

1. Liabilities and Debts of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

2. Liabilities and Debts of Participating Parties . . . . . . . . . . . . . . . . . . . . . . .34

3. Personal Liabilities of Trustees and Fiduciaries  . . . . . . . . . . . . . . . . . . . . .34

4. Judgments against Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

5. Participating Parties' Rights  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

6. Cessation of Participation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

7. Protection of Trust Fund, Contributions, and Benefits  . . . . . . . . . . . . . . .35

8. Reliance upon Written Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

9. Agents of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

— E —

ARTICLE XIII —MISCELLANEOUS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    1. Trust Fund Offices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    2. Applicable Laws and Regulations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    3. Notices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    4. Severability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    5. Title—Words  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    6. Information to be Furnished and Distributed  . . . . . . . . . . . . . . . . . . . . . . . 36

ARTICLE XIV—AMENDMENTS AND TERMINATION  . . . . . . . . . . . . . . . . . . 37

    1. Amendments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    2. Termination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    3. Allocation upon Termination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

SIGNATORY PARTIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

— F —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 14

# PREAMBLE

WHEREAS, the signatory parties (or their predecessors in interest) did previously execute a "Retirement Benefit Plan", with an effective date of October 1, 1955, which document created and governed a joint labor-management employee pension benefit fund presently known as the

**GCIU — Employer
Retirement Fund
and**

WHEREAS, said document did also create an employee pension benefit plan presently known as the

**GCIU — Employer
Retirement Benefit Plan
and**

WHEREAS, said document was subsequently amended in several respects, and

WHEREAS, said document was adopted in accordance with the applicable provisions of Section 302(c) of the Labor Management Relations Act of 1947 and applicable provisions of the Internal Revenue Code, and

WHEREAS, the enactment of the Employee Retirement Income Security Act of 1974 mandated the adoption of certain substantive changes in the documents governing employee pension benefit funds and thus required amendment of the existing document, and

WHEREAS, the Trustees have again determined to revise and restate the existing Trust Agreement so as to further take into account contemporary needs and conditions, including amendments which have been made since the September 1, 1999 revision,

NOW THEREFORE, the Trustees and remaining signatory parties do hereby revise and restate the "Trust Agreement", as follows:

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 15

# ARTICLE I
# DECLARATION OF TRUST

1.   *Name*

The Trustees and the remaining signatory parties hereby reaffirm the declaration and establishment of a Trust Fund known as the

**GCIU — Employer**
**Retirement Fund**

The Trustees may hold property, enter into contracts, and in all matters act on behalf of the Trust Fund in such name. The Trust Fund may sue or be sued in such name.

2.   *Purpose*

The purpose of the Trust Fund is to provide an entity to which contributions from participating employers can be paid and through which the Trustees can administer the GCIU—Employer Retirement Benefit Plan for the benefit of the participating employees for whom such contributions have been paid, and their beneficiaries.

3.   *Nature of Trust Fund*

The Trust Fund is a "trust" as contemplated by Section 302(c)(5) of the Labor Management Relations Act of 1947; a "trust" as contemplated by Section 401(a) of the Internal Revenue Code; and a "trust" as contemplated by Section 403(a) of the Employee Retirement Income Security Act of 1974. It is an entity separate and apart from the participating employers, employer associations, and labor organizations.

4.   *Duration of Trust Fund*

The Trust Fund shall continue in existence on an indefinite basis, contemporaneously with the term of this Trust Agreement.

5.   *Term of Trust Agreement*

This revised and restated Trust Agreement shall be effective as of December 1, 2012, and shall continue indefinitely until such time as it may be terminated in accordance with the provisions of Article XIV hereof.

— 2 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 16

## ARTICLE II
## DEFINITIONS

The following definitions shall govern in this Trust Agreement:

1. "Beneficiary"—any person designated by a participating employee, under the terms of the Retirement Benefit Plan, to receive benefits, if any, upon the death of such participating employee.

2. "Collective bargaining agreement"—a written agreement between a participating employer and a participating labor organization, providing generally for wages, hours, and working conditions, by the terms of which the employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

3. "Contributions"—the payments which a participating employer is obligated to make to the Trust Fund pursuant to the terms of a collective bargaining agreement, subscription agreement, or participation agreement.

4. "Participating employee"—an individual employed by a participating employer and for whom that employer makes contributions to the Trust Fund, as allowed by the provisions of Article V, Sections 1, 2, 3, 4, and 5 and any individual who formerly was so employed and who has achieved vested or retired status under the terms of the Retirement Benefit Plan.

5. "Participating employer"—any employing entity that is party to a collective bargaining agreement or subscription agreement with a participating labor organization, as allowed by the provisions of Article V, Section 1 hereof. An employing entity may be a sole proprietorship, partnership, unincorporated association, corporation, or joint venture; or the United States of America; or any state, county or municipality; or other public agency, public corporation, or governmental unit.

A participating labor organization, or the Trust Fund, or any related trust fund, shall also be considered as a "participating employer" for the limited purpose of allowing the employees of such entities to participate in the Trust Fund, as permitted by Article V, Sections 2 and 5 hereof.

6. "Participating employer association"—any employer association or multi-employer bargaining group that is party to a collective bargaining agreement with a participating labor organization, as allowed by the provisions of Article V, Section 1 hereof.

7. "Participating labor organization"—Graphic Communications Conference of the International Brotherhood of Teamsters, and any local union, district council, joint district council, conference, or other bargaining agency affiliated with or represented by the Conference, that has entered into a collective bargaining agreement or subscription agreement with a participating employer or employer association, as allowed by the provisions of Article V, Section 1 hereof.

8. "Participation agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer is obligated to make contributions to the Trust Fund on behalf of the non-bargaining unit employees covered by such an agreement.

9. "Pension benefits" or "employee pension benefits"—the pension and related benefits provided in the Retirement Benefit Plan.

— 3 —

10. "Related trust fund"—an employee benefit trust fund, other than this Trust Fund, to which participating employers make contributions as required by collective bargaining agreements with participating labor organizations.

11.   "Retirement Benefit Plan"—The GCIU—Employer Retirement Benefit Plan as constituted on the effective date of this Trust Agreement and as hereafter amended.

12.   "Signatory parties"—the parties who have created this Trust Agreement and whose identities and signatures appear on the last page hereof and their successors. (See Note on page 40)

13.   "Subscription agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer and participating labor organization subscribe to the terms and provisions of this Trust Agreement, and by the terms of which an employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

14.   "Trustees" or "Board of Trustees"—the Trustees of the Trust Fund and their successors.

15.   "Trust" or "Trust Fund"—the entity created by this Trust Agreement and all property and money held by such entity, including all contract rights and records.

— 4 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 18

# ARTICLE III
## THE TRUSTEES

1.  *The Board of Trustees*

    The Trust Fund and the Retirement Benefit Plan shall be controlled and administered by a Board of Trustees composed of Employer Trustees and Labor Organization Trustees.

2.  *Statutory Capacities of Trustees*

    For purposes of complying with Section 302(c)(5)(B) of the Labor Management Relations Act of 1947, the participating employers shall be represented, in the administration of the Trust Fund, by the Employer Trustees; and the participating employees shall be represented by the Labor Organization Trustees.

    For purposes of complying with the various provisions of the Employee Retirement Income Security Act of 1974 the Trustees shall be considered as "named fiduciaries", "fiduciaries", the "plan administrator", and the "plan sponsor", as those terms are used in the Act.

3.  *Agents for Service of Process*

    The Trustees shall also be considered as agents of the Trust Fund for the purpose of accepting service of legal process, provided that the Trustees may designate their administrative manager, or another person, as agent of the Trust Fund for this purpose.

4.  *Number of Trustees*

    There may be up to eighteen (18) Trustees, nine (9) of whom shall be Employer Trustees and nine (9) of whom shall be Labor Organization Trustees.

5.  *Alternate Trustees*

    There may also be up to ten (10) alternate Trustees, five (5) of whom shall be alternate Employer Trustees and five (5) of whom shall be alternate Labor Organization Trustees.

    In the event any Employer Trustee is absent from any meeting of the Trustees he may designate an alternate Employer Trustee to serve in his place and stead. If the absent Employer Trustee fails to make such a designation, the Employer Trustees who are present at the meeting may designate an alternate Employer Trustee to serve in the place and stead of the absent Trustee.

    In the event any Labor Organization Trustee is absent from any meeting he may designate an alternate Labor Organization Trustee to serve in his place and stead. If the absent Labor Organization Trustee fails to make such a designation, the Labor Organization Trustees who are present at the meeting may designate an alternate Labor Organization Trustee to serve in the place and stead of the absent Trustee.

    The alternate Trustees, if any, shall be appointed in the same manner and retain such appointment under the same conditions as the regular Trustees. When designated to serve for a regular Trustee, and while serving, an alternate Trustee shall have all of the powers and responsibilities of a regular Trustee.

— 5 —

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 19

6.  *Identity of Present Trustees*

The regular and alternate Trustees serving as of the revised date of this Trust Agreement are:

| *Employer Trustees* | *Labor Organization Trustees* |
|---|---|
| Hugh Gaylord | Edward A. Treacy |
| Jim Janiga | Stephen E. Northup |
| Joseph Conley | John D. Bachler |
| Thomas E. Phillips | George Tedeschi |
| Tom Sarnecki | |
| | *Alternate Labor Organization Trustees* |
| | Ralph Meers |

7.  *Appointment of Successor Employer Trustees*

In the event of the termination of appointment, resignation, or death of an Employer Trustee, a successor Employer Trustee shall be appointed by unanimous action of the remaining Employer Trustees.

8.  *Appointment of Successor Labor Organization Trustees*

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be appointed by unanimous action of all of the signatory labor organizations. If any signatory labor organization fails, within sixty (60) days, to respond to a suggested appointment made by the other signatory labor organizations, that signatory labor organization will be deemed to have waived its rights to participate in or to contest the appointment.

9.  *Individuals Disqualified from Service as Trustees*

No individual who has been convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974 shall serve as a Trustee during the period of disqualification specified in the statute.

10. *Acceptance of Appointment by Trustees*

Each Trustee shall sign a document accepting his appointment as Trustee and agreeing to abide by the terms and provisions of this Trust Agreement.

11. *Term of Appointment*

Each Trustee shall serve until termination of appointment, resignation, or death.

12. *Termination of Appointment by Appointing Entity*

The appointment of an Employer Trustee may be terminated, at any time, by unanimous action of the remaining Employer Trustees.

The appointment of a Labor Organization Trustee may be terminated, at any time, by unanimous action of all of the signatory labor organizations.

The termination of a Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or signatory labor organizations. Any such notice shall be addressed to

— 6 —

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 20

the Trustees and shall be mailed to the Trust Fund's administrative office.

13. *Termination of Appointment for Failure to Attend Meetings*

The appointment of a Trustee shall be automatically terminated if such Trustee fails to attend three *(3)* consecutive meetings of the Trustees, without being excused from attendance by specific action of the remaining Trustees noted in the minutes. Alternate Trustees are exempt from this requirement.

14. *Termination of Appointment for Conviction of a Crime*

The appointment of a Trustee shall be automatically terminated if such Trustee is convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974. If a Trustee who is so disqualified should continue to serve as a Trustee, in circumstances where the remaining Trustees have no knowledge of his disqualification, such service shall not invalidate any of the actions or decisions of the Trustees during the period of such service.

15. *Termination of Appointment for Mental Incapacity*

The appointment of a Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by court decree.

16. *Resignation of Appointment*

A Trustee may resign his appointment at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

17. *Vacancies*

No vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust Fund so long as a quorum exists as specified in Article IV, Section 2 hereof.

18. *Return of Books and Records*

In the event of the termination of appointment, resignation, or death of a Trustee, the Trustee (or his legal guardian, heirs, or personal representative) shall, upon the request of the Chairman or the Secretary or of the administrative manager, forthwith turn over to the administrative manager, any and all records, books, documents, monies, and other property in the possession of the Trustee, or under his control, that belong to the Trust Fund or that were received by him in his capacity as Trustee.

— 7 —

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 21

# ARTICLE IV
# TRUST FUND ADMINISTRATION

1.   *Manner of Voting*

Any action to be taken by the Trustees shall require a favorable vote by the Employer Trustees and by the Labor Organization Trustees, according to the unit method of voting. The Employer Trustees shall have but one vote among them (which shall be determined by a majority of the Employer Trustees present) and the Labor Organization Trustees shall have but one vote among them (which shall be determined by a majority of the Labor Organization Trustees present).

Any Trustee including the Chairman or Secretary may offer or second any motion or resolution for the Trustees' consideration. Any individual Trustee shall be entitled, upon request, to have his vote recorded in the official minutes.

2.   *Constitution of a Quorum*

To constitute a quorum at any meeting of the Trustees there must be present at least three (3) Employer Trustees, or duly designated alternates, and three (3) Labor Organization Trustees, or duly designated alternates.

3.   *Proxies Prohibited*

To encourage full attendance at meetings of the Trustees and due consideration of the matters being voted upon, there shall be no proxies. A Trustee must be present in order to cast a vote.

4.   *Regular Meetings*

The Trustees shall hold regular periodic meetings consistent with the needs of Trust Fund business, provided that there shall be at least two *(2)* regular meetings held during each calendar year. The Trustees shall determine the time and place of all such meetings.

5.   *Special Meetings*

Either the Chairman or the Secretary or any two *(2)* Trustees (one Employer and one Labor Organization Trustee) may call a special meeting of the Trustees by giving written notice to all the other Trustees of the time and place of such meeting, at least thirty (30) days before the date set for the meeting, provided that thirty (30) days advance notice shall not be necessary if all Trustees are agreeable to an earlier meeting.

6.   *Action without a Formal Meeting*

The Trustees may take action without a formal meeting by means of the presentation of a written motion or resolution sent to all Trustees by the administrative manager and the subsequent obtaining of Trustee votes on the motion or resolution in letters, by email, or by facsimile transmission sent by each Trustee to the administrative manager. Any such action shall be reported in the minutes of the next formal meeting.

7.   *Failure of the Trustees to Agree—Arbitration*

In the event the Employer Trustees and Labor Organization Trustees should deadlock on any matter submitted for their consideration, the dispute may be referred by either group of Trustees to an impartial arbitrator in accordance with the labor arbitration rules of the American Arbitration Association. A deadlock shall be deemed to occur when there

— 8 —

is a tie vote on any motion before the Trustees.

The Trustees shall attempt to agree on the joint submission of a statement of the issue in dispute. However, if the Trustees cannot jointly agree upon such a statement, each group of Trustees shall submit to the arbitrator, in writing, its version of the issue in dispute. As part of his award, the arbitrator shall state his determination as to the exact issue.

The decision and award of the arbitrator shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby.

The expenses of any such arbitration, including any court proceedings relating there-to, and the fee of the arbitrator and the reasonable attorney's and witness fees of the parties, shall be chargeable to the Trust Fund.

The procedure specified in this Section shall be the sole and exclusive procedure for the resolution of deadlocked issues.

8.   *Election of Officers*

The Trustees shall elect a Chairman, Vice-Chairman, Secretary and Assistant Secretary. Two of these officers shall be Employer Trustees and two shall be Labor Organization Trustees. When the Chairman is an Employer Trustee, the Vice-Chairman shall also be an Employer Trustee; when the Secretary is a Labor Organization Trustee, the Assistant Secretary shall also be a Labor Organization Trustee, or vice-versa.

The officers shall hold office indefinitely, provided that at the first regular meeting in each odd numbered year, either the Employer Trustees or the Labor Organization Trustees may obtain, on their request, a rotation of all offices and a new election of all officers.

An officer may resign his office at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed, emailed or faxed to the Trust Fund's administrative office. In case of the resignation, death, or termination of appointment of either the Chairman or the Secretary, there shall be a new election of all offices. In case of the resignation, death, or termination of appointment of either the Vice-Chairman or the Assistant Secretary, there shall be a new election of that office only.

9.   *Duties of Officers*

The Chairman shall chair the meetings of the Trustees, shall appoint all committees and shall carry out such other duties as the Trustees may assign to him. The Vice-Chairman, in the absence of the Chairman, shall act in place of the Chairman and perform the Chairman's duties.

The Secretary shall advise the Trustees as to all correspondence and financial reports pertaining to the Trust Fund and shall keep minutes or records of all meetings, proceedings, and actions of the Trustees, provided that these particular responsibilities may be delegated to the administrative manager or to other professional persons retained by the Trustees. The Assistant Secretary, in the absence of the Secretary, shall act in place of the Secretary and perform the Secretary's duties.

10.   *Authorized Signatures*

The Chairman or the Vice-Chairman, and the Secretary or the Assistant Secretary, shall sign all negotiable instruments, certificates, contracts, government reports, and other

— 9 —

legal documents on behalf of the Trust Fund, provided that the authority for signing nego-
tiable instruments may be delegated to the administrative manager, corporate trustee (if
any), depository bank, or custodian bank. All persons doing business with the Trust Fund
may rely on such signatures.

If the Trust Fund issues benefit checks to participating employees or their beneficia-
ries, the signatures of the Chairman and Secretary may be affixed thereto by a facsimile
signature device, under safeguards determined by the Trustees.

11.   *Compensation and Expenses*

No Trustee shall receive any compensation from the Trust Fund for services as a
Trustee.

Each Trustee (and each alternate Trustee who is called upon to substitute for an
absent Trustee) shall be reimbursed out of the Trust Fund for all expenses properly and
actually incurred by him in the administration of the Trust Fund. The Trustees shall estab-
lish the conditions for the reimbursement of expenses.

12.   *Benefits* to *Trustees Not Prohibited*

Nothing in this Trust Agreement shall prohibit a Trustee from receiving any benefits
under the terms of the Retirement Benefit Plan, if he is otherwise eligible for the same as
a participating employee or as a beneficiary of a participating employee.

# ARTICLE V
# PARTICIPATION

1. *Bargaining Unit Employees Entitled to Participate*

Employees in bargaining units covered by collective bargaining agreements between employers and employer associations in the printing and paper products industry and the Graphic Communications Conference of the International Brotherhood of Teamsters, or any local union, district council, joint district council, conference or other bargaining agency affiliated with, merged with, or represented by the Conference, shall be entitled to participate in this Trust Fund.

The Trustees, however, shall have the authority to decline or terminate the participation of a particular bargaining unit if (a) the bargaining parties fail to provide the Trustees with a copy of their collective bargaining agreement or if the language of the contribution provision in such agreement does not meet the requirements of the Trustees, provided that the Trustees, in their discretion, may accept a subscription agreement in lieu of, or to supplement, a collective bargaining agreement; (b) the negotiated contribution rate is lesser, or greater, than the contribution rate or rates allowable under the terms of the Retirement Benefit Plan, provided that the Trustees, in their discretion, may accept the different rate and establish different eligibility rules or benefit formulas for the bargaining unit employees affected; (c) to allow participation as requested would violate any established rule, policy, or procedure  governing participation in the Trust Fund; or (d) there exist other facts and circumstances which, in the Trustees' discretion, justify a declination or termination of participation.

2. *Labor Organization Employees*

Employees of a participating labor organization may participate in the Trust Fund, provided that the labor organization executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees.

The rate at which the labor organization makes contributions to the Trust Fund shall not exceed the highest negotiated rate in the geographical area encompassed by that labor organization.

3. *Non-Bargaining Unit Employees of Participating Employers*

Non-bargaining unit employees of a participating employer may participate in the Trust Fund, provided that the employer executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees. The contribution rate for nonbargaining unit employees shall be a monthly rate equivalent to that which the participating employer is required to pay for its bargaining unit employees. Contributions must be paid on all employees falling within an appropriate group as follows:

Group A—Office clerical employees. All office clerical employees at a particular establishment must be considered as a group and the employer must make contributions for all office clerical employees within such group.

Group B—Managerial employees/business agents/officers. All managerial employees, business agents and officers at a particular establishment must be considered as a

— 11 —

group and the employer must make contributions for all employees within such group. Further, no contributions shall be accepted for a managerial employee, business agent or officer group unless the employer also contributes for the remaining employees at that establishment.

Group C—Foremen and superintendents of printing department. All non-contract foremen and superintendents of the printing department at a particular establishment must be considered as a group and the employer must make contributions for all foremen and superintendents in such group.

Group D—Other non-bargaining groups. The Trustees may recognize and allow other groups of non-bargaining unit employees to participate, as they may determine.

4.   *Transferred Employees*

Individual participating employees who may be transferred from a bargaining unit position to a non-bargaining unit position at a particular establishment may continue to participate in the Trust Fund, provided that the participating employer makes contributions for all such employees. The contribution rate for transferred employees shall be a monthly rate equivalent to that which the participating employer is required to pay for its bargaining unit employees.

5.   *Trust Fund Employees*

Employees of the Trust Fund (if any), or of a related trust fund may participate in the Trust Fund, provided that the Trustees authorize such participation. The cost of such participation shall be chargeable to the Trust Fund or to the related trust fund.

6.   *Unauthorized Participation*

The only individuals who are eligible to participate in and receive benefits from the Trust Fund shall be those employees in the bargaining units and other groups described in Sections 1, 2, 3, 4, and 5 above. It is expected that participating employers will submit contributions only on behalf of such employees. The receipt by the Trust Fund of contributions which may be submitted on behalf of individuals who are not eligible to participate shall not stop the Trustees from declining or terminating the participation of such individuals nor shall it constitute a waiver of any of the provisions of this Article or of the Retirement Benefit Plan.

7.   *Sole Proprietors and Partners Ineligible*

Sole proprietors and partners are not to be considered as participating employees and shall not be eligible to participate in and receive benefits from the Trust Fund.

8.   *Participation of Non-Bargaining Unit Employees*

It is intended that the participation of groups described in Sections 2, 3, 4 and 5 above (and the resulting coverage under and benefits from this Retirement Benefit Plan) will be in accordance with the non-discrimination laws contained in the Tax Reform Act of 1986 and the Technical and Miscellaneous Revenue Act of 1988 and any amendments or regulations issued subsequent thereto, to the extent such laws and regulations are applicable to this Trust Fund and the Retirement Benefit Plan. Any omissions or oversights will be resolved in accordance with the applicable laws and regulations.

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 26

# ARTICLE VI
## TRUSTEE RESPONSIBILITIES

1. *General Duty—Receipt of Contributions and Administration of Retirement Benefit Plan*

It shall be the general duty of the Trustees to receive the employer contributions and any other income or assets which they may obtain and, with such, to administer the Retirement Benefit Plan.

Additionally, the Trustees shall have the specific duties set forth in this Article and such other duties as are imposed upon them by Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, and other applicable laws.

2. *Compliance with the Internal Revenue Code*

The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent allowed in the Internal Revenue Code, employer contributions are tax deductible and the Trust Fund is tax-exempt.

3. *Funding Standards*

The Trustees, with the assistance of their enrolled actuary, shall establish and maintain a funding standard account, as required by Section 304(b)(l) of the Employee Retirement Income Security Act of 1974, for the purpose of determining that the Retirement Benefit Plan remains actuarially sound according to the funding standards imposed by such Act. The funding standard account shall be reviewed by the Trustees at least once each year and on occasions when the Trustees are considering amendments to the Retirement Benefit Plan which involve an actuarial cost.

The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent such is reasonably within their control, the Plan does not accrue an uncorrected "accumulated funding deficiency", as defined in Section 304(a) of the Employee Retirement Income Security Act of 1974. If it should be determined that an "accumulated funding deficiency" has accrued or will accrue, such deficiency may be corrected by the participating employers and labor organizations, through an adjustment in the amount of contributions, or by the Trustees, through an amendment of the Retirement Benefit Plan adjusting the level of benefits.

The foregoing provision shall not be interpreted as a guarantee that the Retirement Benefit Plan will never accrue an uncorrected "accumulated funding deficiency" or as an indemnification on the part of the Trustees as to any liability which may be imposed upon a participating employer with respect to such deficiency under the applicable provisions of such Act or the Internal Revenue Code.

4. *Basis of Payments to and from Trust Fund*

The basis on which the employer contributions are made to the Trust Fund shall be as specified in the underlying collective bargaining agreement, subscription agreement or participation agreement. The basis on which benefits are paid out of the Trust Fund shall be as specified in the Retirement Benefit Plan.

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 27

5.   *Application of Trust Fund Assets*

*As* required by Section 403(c)(l) of the Employee Retirement Income Security Act of 1974, the assets of the Trust Fund shall never inure to the benefit of any participating employer and shall be held for the exclusive purposes of providing benefits to participating employees and their beneficiaries and defraying reasonable administrative expenses.

6.   *Fiduciary Standards*

As required by Section 404(a)(l)(A) and (B) of the Employee Retirement Income Security Act of 1974, the Trustees shall discharge their duties and administer the Trust Fund assets solely in the interest of the participating employees and their beneficiaries and for the exclusive purpose of (a) providing benefits to participating employees and their beneficiaries and (b) defraying reasonable expenses of benefit plan administration.

In carrying out their duties the Trustees shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

7.   *Deposits*

The Trustees shall deposit the contributions or any other monies which they may receive, in one or more banks or similar financial institutions supervised by the United States or a state, pending the allocation of such monies for the payment of current benefits and expenses, or for investment.

8.   *Investments*

The Trustees shall invest all contributions or other monies not required for the payment of current benefits and expenses. The Trustees may invest and reinvest in bank accounts, savings and loan accounts, securities, mortgages, deeds of trust, notes, commercial paper, real estate, insurance contracts, and in such other property, real, personal, or mixed, as they deem prudent provided that in the making of investments the Trustees shall diversify such investments as required by Section 404(a)(l)(C) of the Employee Retirement Income Security Act of 1974 so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Further, no investment shall be made which would constitute a "prohibited transaction" within the meaning of Section 406 of such Act, provided that the Trustees shall have the authority to apply to the Secretary of Labor for a conditional or unconditional exemption from any of the "prohibited transaction" rules, as they may deem necessary.

9.   *Specifically Permitted Investments*

In the event the Trustees designate one or more banks or similar financial institutions supervised by the United States or a state to serve as custodian of the trust assets, or as a corporate co-trustee, or in another fiduciary capacity, the monies belonging to the Trust Fund may be invested in the accounts of such bank or institution, provided that such accounts bear a reasonable interest rate.

Further, to the extent allowed by law, the monies of the Trust Fund may be invested in (a) a common or collective trust fund or pooled investment fund maintained by a bank or trust company supervised by the United States or a state or (b) in a pooled investment fund of an insurance company, or (c) in a group trust sponsored by a qualified investment

— 14 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 28

manager as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, even though such bank, trust company, insurance company, or investment manager is a party-in-interest as that term is designated in Section 3(14) of the Employee Retirement Income Security Act of 1974, provided that the bank, trust company, insurance company, or investment manager receives not more than reasonable compensation for managing such an investment.

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments, including, but not limited to, REITS, private equity funds, infrastructure funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above.

10. *Title to Investments and Other Assets*

Title and voting rights to all investments or other assets of the Trust Fund shall be maintained in the name of the Trust Fund provided that for convenience in transferring securities, title and voting rights to such securities may be held in the name of the Trust Fund's custodian bank, or of its nominee.

Except as may be authorized by regulation of the Secretary of Labor the indicia of ownership of all investments and other assets of the Trust Fund shall not be maintained outside the jurisdiction of the district courts of the United States.

11. *Fidelity Bond*

The Trustees shall procure a fidelity bond in the amount required by Section 412 of the Employee Retirement Income Security Act of 1974 covering the Trustees, the administrative manager, and all other persons who receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of the Trust Fund. The cost of such bond shall be chargeable to the Trust Fund.

12. *Records*

The Trustees shall maintain records of their administration of the Trust Fund and the Retirement Benefit Plan, including records of all receipts and disbursements, all investments purchased or sold, all participating employee listings, all minutes of Trustee meetings, and all correspondence. No such record shall be destroyed except upon the specific action of the Trustees and destruction shall not be directed until a period of eight (8) years has elapsed from the date the record was created, unless some additional period is required by law.

13. *Annual Audit*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an independent qualified public accountant as that term is defined in Section 103(a)(3)(D) of the Employee Retirement Income Security Act of 1974 and shall authorize such accountant to conduct an annual financial examination of the Trust Fund, as required by Section 103(a)(3)(A) of such Act, and such other examinations as the Trustees may deem necessary. The cost of such examinations shall be chargeable to the Trust Fund.

A statement of the results of each annual examination shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

— 15 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 29

14. *Annual Actuarial Statement*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an enrolled actuary, as that term is defined in Section 103(a)(4)(C) of the Employee Retirement Income Security Act of 1974, and shall authorize such actuary to prepare an annual actuarial statement as to the Retirement Benefit Plan, as required by Section 103(d) of such Act. The cost of such statement shall be chargeable to the Trust Fund.

The annual actuarial statement shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

The enrolled actuary shall also be authorized to conduct an annual actuarial valuation as required under Section 304(c)(7) of such Act.

15. *Summary Plan Description*

The Trustees shall furnish to the Department of Labor, upon request, any documents related to the employee benefit plan, including but not limited to the latest summary plan description, and any modifications or changes in the information contained in such description, as required by Section 104(a)(6) of the Employee Retirement Income Security Act of 1974.

The Trustees shall also furnish to participating employees and to each beneficiary receiving benefits copies of the summary plan description and copies of any modifications or changes in the information in such description, as required by Section 104(b)(l) of such Act.

16. *Annual Report*

The Trustees  shall prepare and file with the Department of Labor an annual report as required by Sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 as amended. The Trustees shall also furnish a report to participating employers and the participating labor organizations within 30 days after the due date for filing of the annual report that contains the summary plan information set forth under Section 104 (d) of such Act.  In no case shall a participating employer or participating labor organization be entitled to receive more than one copy of any such document described in Section 104(d) of the Act during any one 12-month period. The Trustees may impose a reasonable charge to cover copying, mailing, and other costs of furnishing copies of the required information.

17. *Statements of Accrued Pension Benefits*

As required by Section 105(a)(1)(B) of the Employee Retirement Income Security Act of 1974, the Trustees shall furnish a pension benefit statement at least every 3 years to each participating employee with a nonforfeitable accrued benefit and who is employed by a participating employer at the time the statement is to be furnished, and to a participating employee or beneficiary upon written request. The pension benefit statement shall indicate, on the basis of the latest information available, (a) the total benefits accrued and (b) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable. Such statements may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee or beneficiary. Alternatively, the Trustees may comply with the requirements of Section 105 (a) (1) (B) of such Act by providing at least once a year to participating

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 30

employees notice of the availability of the pension benefit statement and the ways in which the participating employee may obtain such statement. Such notice may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee. In no case shall a participating employee or beneficiary be entitled to more than one pension benefit statement in any 12-month period.

In addition, the Trustees shall furnish to each participating employee who during the Plan Year separates from service covered by the Benefit Plan, who is entitled to a deferred vested benefit under the Benefit Plan as of the end of such Plan Year, and with respect to whom retirement benefits were not paid under the Benefit Plan during such Plan Year, a statement describing the nature, amount and form of the deferred vested benefit to which such participating employee is entitled. Such statement shall also include a notice to the participating employee of any benefits which are forfeitable if the participant dies before a certain date. The Trustees shall also file an annual registration statement with the Internal Revenue Service concerning participating employees to whom such statements have been issued, as required by Section 6057 of the Internal Revenue Code.

18.   *Pension Funding Notice*

The Trustees shall provide an annual pension funding notice to the Pension Benefit Guaranty Corporation, to each participating employee and beneficiary, to the participating labor organization, and to each participating employer. The notice shall contain the specific information required for multiemployer plans as set forth under Section 101(f)(2) of the Employee Retirement Income Security Act of 1974 and shall be provided to the applicable parties not later than 120 days after the end of the Plan Year to which the notice relates. Such notice may be provided in written, electronic, or other appropriate form to the extent such form is reasonably accessible to persons to whom the notice is required to be provided.

19.   *Income Tax Withholding and Reporting*

The Trustees (or their duly appointed custodian bank) shall annually provide each retired employee or beneficiary receiving benefits with notice of the right to elect against withholding of income tax from his pension benefits and the right to revoke such election as required by Section 3405 of the Internal Revenue Code.

The Trustees shall also furnish to each retired employee or beneficiary receiving benefits an annual statement of the benefits paid to him, as required by Section 6051 (a) of such Code.

20.   *Documents to be Examined or Furnished*

The Trustees shall make copies of (a) this Trust Agreement, (b) the latest summary plan description, (c) the latest annual report, (d) the applicable collective bargaining agreement, and (e) any other contracts or instruments under which the employee pension benefit plan is established or operated available for examination by participating employees or their beneficiaries in the Trust Fund office as required by Section 104(b)(2) of the Employee Retirement Income Security Act of 1974.

The Trustees shall upon written request by any participating employee or beneficiary, furnish to the participating employee or beneficiary a copy of (a) this Trust Agreement, (b) the latest updated summary plan description, (c) the latest annual report, (d) any terminal report, (e) the applicable collective bargaining agreement, and (f) any other contracts or instruments under which the employee pension benefit plan is established or operated,

— 17 —

as required by Section 104(b)(4) of such Act. Such copies shall be furnished within thirty (30) days of the request. The Trustees may impose a reasonable charge for such copies as may be allowed by regulation of the Secretary of Labor.

The Trustees shall also, upon written request by a participating employee or beneficiary, furnish to the participating employee or beneficiary a copy of a) any periodic actuarial report (including any sensitivity testing received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, b) a copy of any quarterly, semi-annual or other financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, and c) any application filed with the Secretary of the Treasury requesting an extension under Section 304 of the Act or Section 431 (d) of the Internal Revenue Code of 1986, as required by Section 101(k) of the Act subject to limitations imposed by Section 101(k) with regard to individually identifiable information and proprietary information. Such copies shall be furnished within 30 days of the request but only one copy of any report or application may be received during one 12 month period. The Trustees may impose a reasonable charge to cover copying, mailing and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor. This provision also applies to the participating employers and labor organizations.

21. *Procedure for Establishing Funding Policy*

As required by Section 402(b)(l) of the Employee Retirement Income Security Act of 1974, the Trustees shall meet periodically with the administrative manager, enrolled actuary, independent qualified public accountant, investment manager or managers (if any), and such other Trust Fund advisers as may be appropriate for the purpose of anticipating the short and long run financial needs of the Trust Fund and of establishing an appropriate funding policy and method for the Trust Fund.

The funding policy and method shall be considered by the Trustees, or by their investment manager or managers (if any), in the management of trust fund investments.

22. *Payments to Pension Benefit Guaranty Corporation*

The Trustees shall pay to the Pension Benefit Guaranty Corporation the plan termination insurance premiums fixed by the Corporation, as required by Section 4002(a) of the Employee Retirement Income Security Act of 1974. Such premiums shall be chargeable to the Trust Fund. Consistent with regulations issued by the Corporation, the Trustees shall have the authority to adopt a definition of a plan "participant" and to compute and pay premiums on the basis of that "definition".

23. *Benefit Claim and Review Procedures*

The Trustees shall establish administrative procedures whereby a participating employee or beneficiary who makes a claim for benefits and that claim is denied, is notified, in writing, of the reasons for such denial including specific references to the Retirement Benefit Plan provisions upon which the denial is based, a description of any additional information which is necessary to perfect the claim and why the information is necessary, and which afford such a participating employee or beneficiary a reasonable opportunity for a full and fair review, as required by Section 503 of the Employee Retirement Income Security Act of 1974. Such procedures shall include the Benefit Claim

— 18 —

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 32

and Review Procedures for a participating employee or beneficiary as set out in Article XIII, Section 5 of the Retirement Benefit Plan

# ARTICLE VII
## ALLOCATION OR DELEGATION OF TRUSTEE RESPONSIBILITIES

1. *Allocation of Responsibilities to Committees*

The Trustees may allocate to one or more committees of Trustees all or part of the following responsibilities, with full power to act: (a) the responsibility for managing the Trust Fund investments (if not otherwise delegated to a qualified investment manager); (b) the responsibility for reviewing and determining benefit claims of participating employees and their beneficiaries; (c) the responsibility for conducting hearings and issuing determinations as provided for in Article XI, Section 3 hereof; (d) the responsibility for resolving questions or problems that may be encountered in connection with payroll auditing or employer withdrawal liability activities; (e) the responsibility for resolving questions or problems that may be encountered in connection with the collection of delinquent employer accounts; (f) the responsibility for resolving questions or problems that may be encountered in connection with the day-to-day work of the administrative manager; (g) the responsibility for reviewing the performance of the qualified investment managers (if any), and of the other persons retained by the Trustees.

In the event the Trustees elect to allocate any of the stated responsibilities they shall do so by the adoption of a motion or resolution calling for the appointment of a committee of Trustees (consisting of equal numbers of Employer Trustees and Labor Organization Trustees) and specifying the particular responsibility that is being allocated. With respect to the responsibility that is allocated, the committee shall have the powers of the full Board of Trustees. Any action to be taken by the committee shall be determined according to the voting formula contained in Article IV, Section 1 hereof. If the committee members deadlock on any matter submitted for their consideration such matter shall be referred to the full Board of Trustees for review and action.

Nothing contained herein shall in any way limit the authority of the Trustees to create additional committees for the purpose of assisting with or expediting the affairs of the Trust Fund, provided that any such committee shall be empowered only to make recommendations with respect to the matters referred to it.

2. *Delegation of Investment Responsibilities*

The Trustees may delegate all or part of their responsibilities for the management of the Trust Fund investments to one or more qualified investment managers, as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, i.e., (a) an investment adviser registered as such under the Investment Advisers Act of 1940, (b) a bank as defined in that Act, or (c) an insurance company qualified to manage, acquire, or dispose of employee benefit plan assets under the laws of more than one state.

In the event the Trustees elect to delegate investment responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated investment manager(s). The delegation shall be effective when the investment manager(s) accepts the delegation and acknowledges in writing his status as a fiduciary with respect to the Trust Fund.

— 19 —

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 33

3.    *Delegation of Other Responsibilities*

The Trustees may delegate all or part of their responsibilities with respect to the administration of the Trust Fund or the Retirement Benefit Plan (except investment responsibilities) to their administrative manager or to any other person whom they may designate for such purpose.

In the event the Trustees elect to delegate a particular responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated person. The delegation shall be effective when the designated person accepts the delegation. If the delegation involves a responsibility other than one which is ministerial in nature, the designated person shall also acknowledge in writing his status as a fiduciary with respect to the Trust Fund.

4.    *Review of Performance*

In the event the Trustees elect to allocate or delegate Trustee responsibilities they shall periodically review the performance of the persons to whom such responsibilities have been allocated or delegated.

— 20 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 34

# ARTICLE VIII
# TRUSTEE POWERS

1.   *General Powers*

Except as may be expressly limited by the terms of this Trust Agreement, the Trustees shall have full and exclusive authority to control and administer the Trust Fund and the Retirement Benefit Plan.

The authority of the Trustees encompasses not only the specific powers recited in the various paragraphs of this Trust Agreement but also includes the general power to do all things and take all actions, including the expenditure of Trust Fund monies, which they may deem necessary to carry out the purpose of this Trust Agreement. The Trustees may implement their powers through the adoption of appropriate motions, resolutions, or administrative rules and regulations. Unless otherwise stated in this Trust Agreement, the Trustees will serve as fiduciaries in the creation, the administration and design of the Benefit Plan hereunder and in the implementation of any action resulting from these functions or in the exercise of any other general or specific power set out in this Trust Agreement.

2.   *Specific Powers Discretionary*

The recitation of specific powers in this Trust Agreement shall not be interpreted as compelling the exercise of any such power. The exercise of specific powers is discretionary with the Trustees.

3.   *Benefit Plan Being Administered*

The employee pension benefit plan being administered through this Trust Fund as of the effective date of this Trust Agreement is described as the

**GCIU—Employer**
**Retirement Benefit Plan**

4.   *Amendments to the Benefit Plan*

The Trustees shall have the authority to amend the Retirement Benefit Plan, in whole or in part, as they may determine. Such amendments may involve the rules under which participating employees and beneficiaries become eligible for pension benefits, the nature of the pension benefits to be provided, including any related benefits, and the amount and duration of such benefits.

No amendment shall be made if the same is prohibited by the provisions of the Employee Retirement Income Security Act of 1974 or the Internal Revenue Code and, if the subject matter is governed by the Act, or the Code, the amendment shall conform to the requirements of the Act or the Code.

5.   *Means of Providing Benefits*

The Trustees may provide the benefits specified in the Retirement Benefit Plan, in whole or in part, directly from the Trust Fund or may contract with an insurance carrier or other legally authorized entity, to underwrite or provide such benefits.

— 21 —

6.   *Facility of Payment*

The Trustees shall have the authority to adopt rules by the terms of which benefit payments owing to minors or incompetents may be paid instead to a person or institution providing care or other services to such minor or incompetent, even though a legal guardianship does not exist. Benefit payments made under any such rules shall fully discharge the Trust Fund's obligation to the minor or incompetent.

7.   *Administrative Manager*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, an administrative manager to assist the Trustees in the administration of the Trust Fund and the Retirement Benefit Plan. Such administrative manager may be retained on a contract or salaried basis, as the Trustees may determine.

In the event the Trustees employ a salaried administrative manager they shall also have the authority to employ such additional administrative staff personnel as may be necessary.

The Trustees shall periodically review the performance of the administrative manager.

8.   *Banking Services*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more banks or similar financial institutions supervised by the United States or a state, to perform depository or custodial services, or to serve as corporate trustee or co-trustee, on behalf of the Trust Fund.

The Trustees shall periodically review the performance of the banks which they have retained to provide banking services.

9.   *Other Professional and Non-Professional Persons*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, actuaries, attorneys, employee benefit plan consultants, investment managers, investment performance analysts, payroll auditors, collection agents, and other professional or non-professional persons, as they may deem necessary. Unless limited by the provisions of the Employee Retirement Income Security Act of 1974, the retention of any such professional or non-professional help may be on a contract or salaried basis, as the Trustees may determine.

The Trustees shall periodically review the performance of the professional or nonprofessional persons they have retained.

10.   *Obtaining of Necessary Premises, Equipment, and Supplies*

The Trustees shall have the authority to purchase or lease suitable premises and equipment and to purchase materials and supplies, at the expense of the Trust Fund, as they may deem necessary.

11.   *Insurance*

The Trustees shall have the authority to purchase policies of insurance (liability, property damage, casualty, and errors and omissions) to protect the Trust Fund and to protect themselves, their administrative manager, and their employees (if any), with respect

— 22 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 36

to their activities on behalf of the Trust Fund, as they may deem necessary. The costs of such insurance policies shall be chargeable to the Trust Fund.

Any policy of errors and omissions insurance shall contain a recourse clause as required by Section 410(b)(l) of the Employee Retirement Income Security Act of 1974, provided that nothing herein shall prevent a Trustee (or an employer, employer association, or labor organization acting on his behalf) or the administrative manager, or the Trust Fund employees (if any) from purchasing for themselves a waiver of the recourse clause or a separate policy insuring against such recourse.

12.   *Borrowing Money*

The Trustees shall have the authority to borrow money for the Trust Fund, with or without security, as they may deem necessary.

13.   *Reserve Funds*

The Trustees shall have the authority to maintain reasonable reserve funds, for future contingencies, as they may deem necessary.

14.   *Payment of Taxes*

The Trustees shall have the authority to pay, at the expense of the Trust Fund, all real and personal taxes, and other taxes and assessments of any kind, which may be lawfully levied or assessed against the Trust Fund.

15.   *Refunds of Contributions Erroneously Paid*

The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating employer where the employer has paid such contributions in error, as may be allowed by Section 403(c) of the Employee Retirement Income Security Act of 1974.

16.   *Penalties for False or Withheld Information*

The Trustees shall have the authority to adopt rules and regulations by the terms of which reasonable penalties or forfeitures may be imposed upon participating employees or beneficiaries who (a) falsify any information requested of them in the administration of the Trust Fund and the Retirement Benefit Plan, or (b) fail to provide requested information within a reasonable time.

17.   *Correction of Errors*

It is recognized and acknowledged by all parties that the Trustees will provide eligibility credits and benefits to participating employees and their beneficiaries based on Trust Fund records. It is also recognized and acknowledged that such records could be incorrect due to (a) employers reporting individuals who are not eligible for participation, (b) employers reporting incorrect names or incorrect social security numbers, (c) employers reporting more or less than the hours or contributions required to be reported, (d) delinquent employer reports, (e) employees or beneficiaries submitting incorrect or false benefit applications, (f) recording or computation errors by the administrative manager, (g) computer errors, or (h) other similar circumstances. The Trustees shall have the authority to correct the Trust Fund records whenever errors are discovered and to terminate participation, adjust eligibility credits or benefits, or seek the recovery of benefit overpayments,

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 37

as they may determine.

18. *Prosecution of Legal Action or Claims*

The Trustees shall have the authority to originate and maintain any legal actions, or claims involving potential legal actions, at the expense of the Trust Fund, as they may deem necessary. All such actions and claims shall be prosecuted in the name of the Trust Fund or in the name of an assignee.

19. *Defense of Legal Actions or Claims*

The Trustees shall have the authority to defend all legal actions, claims involving potential legal actions, and investigatory proceedings, initiated against the Trust Fund or against one or more of the Trustees, or former Trustees, or the administrative manager, or against one or more of the employees of the Trust Fund (if any) which relate to the administration of the Trust Fund or the Retirement Benefit Plan. Except as stated below, the defense of such actions, claims and proceedings shall be at the expense of the Trust Fund.

If the final court decree establishes personal liability on the part of specified Trustees, or the administrative manager, or the employees of the Trust Fund (if any) for breach of their fiduciary responsibilities, as permitted by Section 409(a) of the Employee Retirement Income Security Act of 1974, and orders that the specified persons are to bear the expenses of their own defense, the attorney fees and costs of the specified persons shall not be chargeable to the Trust Fund. If attorney fees and costs have already been charged to the Trust Fund, the specified persons shall be obligated to repay the Trust Fund for their pro rata share of such fees and costs.

20. *Compromise of Legal Actions or Claims*

The Trustees shall have the authority to compromise, settle, or release all legal actions, or claims involving potential legal actions, in favor of or against the Trust Fund on such terms and conditions as they may determine.

21. *Subscription and Participation Agreements*

The Trustees shall have the authority to create and distribute subscription and participation agreements, at the expense of the Trust Fund, and to insist upon the execution and filing of such agreements as a condition precedent to the acceptance of contributions.

22. *Participation in Non-Profit Educational Organizations*

The Trustees shall have the authority to participate in non-profit foundations, corporations, councils, committees, or other organizations which sponsor educational programs or provide educational materials pertaining to the administration of trust funds of this nature and of employee benefit plans. If the Trustees act to participate in any such non-profit organization, the membership or participation fees of the organization shall be chargeable to the Trust Fund.

The Trustees shall also have the authority to purchase educational materials and to provide for the attendance of the Trustees, or of their administrative manager, or of such of their employees (if any), as they may designate, at educational conferences and meetings. The costs of such materials and attendance shall be chargeable to the Trust Fund.

23. *Reciprocity*

The Trustees shall have the authority to enter into reciprocal agreements with other

— 24 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 38

employee pension benefit funds for the exchange of eligibility credits or monies, or for the payment of pro rata benefits, on behalf of employees who may terminate their participation in the Trust Fund and begin participation in a reciprocal trust fund, and vice-versa.

24. *Mergers*

The Trustees may accept mergers of other employee pension benefit trust funds, maintained by participating employers or jointly by participating employers and participating labor organizations, into this Trust Fund so that individual participants in such other trust funds can become participants in this Trust Fund. To that end, the Trustees shall have the authority to negotiate and consummate appropriate merger agreements which provide for the transfer of assets and liabilities from other employee pension benefit trust funds to this Trust Fund.

Any such merger agreement shall conform to these standards: (a) the value of the retirement benefits assumed by this Trust Fund (as determined on the basis of actuarial standards approved by the Trustees) with respect to the participants of the other trust fund who had retired prior to the date of the merger agreement shall not exceed the market value (determined on the date of transfer) of the assets transferred to this Trust Fund on behalf of such retired participants and (b) the value of the aggregate current service credited to the participants in the other trust fund who had not retired as of the date of the merger agreement shall not exceed one year of current service for each $1,300 (or other amount which may be fixed by the Trustees) of market value (determined on the date of transfer) of the remaining assets transferred to this Trust Fund on behalf of such participants, after allocation for retired participants.

Any such merger agreement shall also include such requirements as may be applicable under Section 208 of the Employee Retirement Income Security Act of 1974 and under the applicable provisions of the Internal Revenue Code.

25. *Eligible Rollover Plan Distributions*

The Trustees shall have the authority to administer direct trustee-to-trustee transfers of eligible rollover plan distributions to financial institutions selected by the participant (or spouse or former spouse). The Trustees shall also have the authority to implement any necessary procedures and policies which are required by the Unemployment Compensation Amendment Act of 1992 and any amendments or regulations issued relating thereto in order to comply with the Act and regulations.

26. *Interpretation and Application of Documents*

The Trustees shall have the authority to interpret and apply the provisions of this Trust Agreement, or of the Retirement Benefit Plan, or of their own motions, resolutions, and administrative rules and regulations, or of any contracts, instruments, or writings which they may have adopted or entered into.

27. Adoption and Implementation of a Funding Improvement Plan and Rehabilitation Plan

The Trustees shall have the authority to adopt and implement a funding improvement plan and a rehabilitation plan in accordance with the provisions of ERISA Section 305, should the enrolled actuary certify that the Retirement Benefit Plan is in endangered or critical status. In this regard, the Trustees shall provide the participating employers and

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 39

participating labor organizations with a schedule or schedules showing revised benefit and/or contribution structures which, if adopted, might reasonably be expected to allow the Retirement Benefit Plan to achieve applicable funding benchmarks (if the Retirement Benefit Plan is in endangered status) or to allow the Retirement Benefit Plan to emerge from critical status or to stave off insolvency.

If upon expiration of a collective bargaining agreement in effect at the time the Retirement Benefit Plan entered endangered or critical status, a participating employer and the participating labor organization are unable to agree on a new contract that includes benefit and/or contribution schedules necessary to allow the Retirement Benefit Plan to meet the applicable benchmarks, if the Retirement Benefit Plan is in endangered status, or to allow the Retirement Benefit Plan to emerge from critical status, or to stave off insolvency, the Trustees shall have the authority to implement the default schedule as described under ERISA Section 305(c)(1) (B)(i) (I) and Section 305 (e)(1)(B)(ii).

Nothing in this section should be construed as to limit the Trustees' authority and powers under the Trust Agreement or applicable provisions of ERISA.

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 40

# ARTICLE IX
## CONTRIBUTIONS AND COLLECTIONS

1.   *Contribution Reporting Forms*

The Trustees shall create and make available, at the expense of the Trust Fund, contribution reporting forms for the use of participating employers in making their contributions.

2.   *Contributions Due*

Contributions shall be made on all hours worked or paid for, as required by the terms of the collective bargaining agreement. Hours worked include overtime hours. Hours paid for generally include vacation, sick, holiday, and probationary hours, whether specifically included in the collective bargaining agreement, or not.

3.   *Contribution Due Date*

All contributions shall be due by the fifteenth (15) day of the month following the month in which they accrue.

4.   *Delinquent Contributions*

A participating employer shall be considered to be delinquent in the payment of contributions if he (a) fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date, or (b) fails to submit contributions on behalf of all the employees for whom contributions are required under the applicable collective bargaining agreement, subscription agreement, or participation agreement, or (c) fails to properly compute the contributions according to the required contribution formula specified in the applicable collective bargaining agreement, subscription agreement, or participation agreement.

The Trustees shall undertake reasonable efforts to collect known delinquent contributions and related claims.

5.   *Audit of Employer Books and Records*

The Trustees shall have the authority to audit the payroll books and records of a participating employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or on a case by case basis, as the Trustees may determine.

Whenever a payroll audit is authorized, the participating employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include (a) all records which the employer may be required to maintain under Section 209(a)(l) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the employer's federal, state, and local payroll tax reports, and all other documents and reports which reflect the hours and wages or other compensation of the employees or from which such can be verified (or electronic versions thereof).

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 41

In the event the payroll audit discloses that the participating employer has not paid contributions, as required by the applicable collective bargaining agreement, subscription agreement, or special agreement, the employer shall be liable for the costs of the audit.

6.   *Liquidated Damages, Attorney Fees, Interest, and Other Charges*

It is recognized and acknowledged by all parties, including the participating employers, that the prompt and accurate payment of contributions is essential to the maintenance of an employee benefit trust fund and benefit plan and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the trust fund and plan which would result from the failure of a participating employer to pay the required contributions within the time provided.

Therefore, if an employer is delinquent in the payment of contributions by the tenth (10th) day following the contribution due date, or by such other date as the Board of Trustees may from time to time establish, the delinquent employer shall be liable, in addition, for liquidated damages of ten percent (10%) of the amount of the contributions which are owed, or twenty five dollars ($25), whichever is greater.

If the delinquent contributions or liquidated damages are not paid by the tenth (10th) day of the month following the month in which they were due, or by such other date as the Board of Trustees may from time to time establish, the account will be referred to legal counsel, or a collection agent, for collection. Upon such referral, the delinquent employer shall be liable for reasonable attorney fees and for reasonable costs incurred in the collection process, including court fees, audit fees, etc. In addition, delinquent contributions shall bear interest at the rate of ten percent (10%) per annum until paid, computed from the contribution due date.

7.   *Additional Liquidated Damages in Event of Court Judgment*

In the event it is necessary to pursue a collection to a court judgment, the delinquent employer shall be liable for additional liquidated damages of ten percent (10%) of the amount of the contributions which are owed, making a total of twenty percent (20%). As provided in Section 515 of the Employee Retirement Income Security Act of 1974, as amended, the employer shall, if a judgment is entered, be obligated to the Trust Fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of twenty percent (20%), reasonable attorney's fees and costs, and such other legal or equitable relief as may be appropriate.

8.   *Waiver of Charges*

The Trustees shall have the authority to waive all or part of the payroll audit costs, liquidated damages, interest, attorney fees, or collection costs, for good cause shown.

9.   *Protection of Employees in Cases of Delinquency*

To protect participating employees and beneficiaries in situations where participating employees may be denied pension credits because their employer is delinquent in the payment of contributions, the Trustees shall have the authority to extend pension credits to such employees.

The extension of pension credits shall not, however, release the delinquent employer from the responsibility for payment of the contributions owed.

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 42

10.  *Coordination with Provisions in Collective Bargaining Agreements*

      In the event the underlying collective bargaining agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorney fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges.

      The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any) provided for in the applicable collective bargaining agreement.

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 43

# ARTICLE X
# EMPLOYER WITHDRAWAL LIABILITY

1.  *Calculation and Collection of Employer Withdrawal Liability*

As provided in the Multi-Employer Pension Plan Amendments Act of 1980 (PL 96-364) (hereafter the Act), in the event a participating employer should withdraw from the Trust Fund, the Board of Trustees shall (a) determine the amount of the employer's withdrawal liability (if any), (b) notify the employer of the amount of the withdrawal liability and (c) collect the amount of withdrawal liability from the employer. In carrying out this responsibility the Board of Trustees shall apply the terms and provisions of the Act, and any regulations issued thereunder, provided, however, that the Board of Trustees may from time to time adopt alternate methods or formulae as permitted in the Act.

Sections 2, 3, and 4, set forth hereafter, have been adopted as alternates under the Act.

2.  *Determination of Amount of Unfunded Vested Benefits Allocable to Withdrawing Employer*

As allowable under 4211(a) of the Act, the Board of Trustees shall determine the amount of unfunded vested benefits allocable to a withdrawing employer in accordance with the formula set out in Section 4211(b) of the Act, and any regulations issued thereunder, with the following modifications: (a) the initial pool will be based on the December 31, 2006 unfunded vested benefit liability, reduced by the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, (b) the calculation of subsequent pools established for changes in unfunded vested benefits as defined in 4211(b) (2) (B) of the Act will continue to reflect the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, and (c) in any Plan year where the unfunded vested benefit liability at the end of the prior year is zero, the unfunded vested benefit liability allocation pools for prior years will be considered fully amortized and reset to zero.

In making such a determination, reasonable actuarial assumptions and methods shall be applied as allowable under Section 4213(a)(1) of the Act and as determined by the Fund's actuary.

3.  *Payment of Withdrawal Liability in Monthly Installments*

As allowable under Section 4219(c)(3) of the Act, the annual withdrawal liability payments owing to this Trust Fund by a withdrawing employer shall be payable in twelve equal monthly installments, due on the first (1st) day of each month, in advance.

4.  *Adoption of Administrative Rules and Regulations*

The Board of Trustees shall adopt administrative rules and regulations relating to the processing of employer withdrawal situations.

5.  *Notice of Potential Withdrawal Liability*

As provided in Section 101(1) of the Employee Retirement Income Security Act of 1974, the Board of Trustees shall, upon written request, furnish to any employer who has an obligation to contribute to the Fund (a) a notice of the estimated amount of what would

— 30 —

EXHIBIT 1 to COMPLAINT - 44

be the employer's withdrawal liability if the employer withdrew on the last day of the plan year preceding the date of the request, and (b) an explanation of how such estimated withdrawal liability was calculated, including (i) the actuarial assumptions and methods used to determine the value of the Retirement Benefit Plan's liabilities and assets; (ii) the data regarding employer contributions, unfunded vested benefits and annual changes in the Retirement Benefit Plan's vested benefits; and (iii) changes in the application of any relevant limitations in the estimated withdrawal liability. Such notice shall be furnished to the requesting employer within 180 days after the request but in no case shall an employer be entitled to receive more than one such notice during any one 12-month period. The Board of Trustees shall impose a reasonable charge on each employer requesting such a notice.

— 31 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 45

# ARTICLE XI
## BENEFIT CLAIM, HEARING AND ARBITRATION PROCEDURES

1.   *Hearings Required*

    The Trustees shall afford a hearing to any participating employer, employer association, or labor organization who is aggrieved by any decision or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal in person, or through a representative, or by written submission.

    It shall be the obligation of any such person to exhaust the hearing procedures specified in this Article before instituting final and binding arbitration concerning any such decision or action.

2.   *Requests for Hearings*

    Any person seeking a hearing shall make a request therefore, in writing, within sixty (60) days after being apprised of, or learning of, the complained of decision or action. All such requests shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

3.   *Conduct of Hearings*

    Upon receipt of a request for a hearing, the Trustees shall fix a date and place for a hearing. At the hearing, the complaining person shall be entitled to present his position and any witnesses or other evidence in support thereof. The complaining person may be represented by an attorney or by any other representative of his choosing. In the alternative, the complaining person may choose to present his appeal by written submission.

    The Trustees shall, within thirty (30) days following the hearing, issue a written decision affirming, modifying, or setting aside the former decision or action.

4.   *Hearing Rules*

    The Trustees shall have the authority to adopt rules governing the conduct of any such hearing.

5.   *Arbitration - Mandatory*

    If the complaining person is dissatisfied with the written decision of the Trustees, he shall have the right to appeal the matter to mandatory, final and binding arbitration in accordance with the labor arbitration rules or the employee benefit claim rules of the American Arbitration Association, provided that he submit a request for arbitration to the Trustees, in writing, within sixty (60) days of receipt of the written decision. If an appeal to arbitration is requested, the Trustees shall submit to the arbitrator a certified copy of the record upon which the Trustees' decision was made.

    The question for the arbitrator shall be (1) whether the Trustees were in error upon an issue of law, (2) whether they acted arbitrarily or capriciously in the exercise of their discretion, or (3) whether their findings of fact were supported by substantial evidence. The decision of the arbitrator shall be final and binding upon the Trustees, upon the appealing party, and upon all other parties whose interests are affected thereby. The expenses of the arbitration shall be borne equally by the appealing party and by the Trust Fund, unless otherwise ordered by the arbitrator.

— 32 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 46

6.   *Benefit Claim and Review Procedures for a Participating Employee or Beneficiary*

The Trustees shall provide benefit claim and review procedures for any participating employee or beneficiary who has made a claim for benefits and is aggrieved by any decision or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal under the Benefit Claim and Review Procedures set out in Article XIII, Section 5 of the Retirement Benefit Plan.

7.   *Sole and Exclusive Remedies*

These Benefit Claim, Hearing and Arbitration procedures are the sole and exclusive remedies for all complaining persons.

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 47

# ARTICLE XII
## LIMITATIONS

1.  *Liabilities and Debts of Trust Fund*

    No participating employer, employer association, or labor organization, shall be responsible for any liabilities or debts of the Trust Fund. This provision, however, shall not relate to any liability that may be imposed upon a participating employer under Section 4971 of the Internal Revenue Code or Title IV of the Employee Retirement Income Security Act of 1974, as amended by the Multi-Employer Pension Plan Amendment Act of 1990.

2.  *Liabilities and Debts of Participating Parties*

    No participating employer, employer association, or labor organization shall, by reason of their participation in the Trust Fund, become responsible for the liabilities or debts of any other participating employer, employer association, or labor organization.

3.  *Personal Liabilities of Trustees and Fiduciaries*

    No Trustee or other fiduciary shall incur any personal liability in connection with the administration of the Trust Fund or the Retirement Benefit Plan, except for such liability that may be established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

    Except as may be required by applicable provisions of such Act, no Trustee or other fiduciary shall be held personally liable for any breach of fiduciary responsibilities in connection with the administration of the Trust Fund or the Retirement Benefit Plan where it is established (a) that the responsibilities at issue were lawfully allocated or delegated to other Trustees or fiduciaries or (b) that in carrying out the responsibilities at issue the Trustee or other fiduciary reasonably relied upon the advice given by the administrative manager or by one or more of the professional persons employed by the Trustees.

    No Trustee or other fiduciary shall be personally liable for a breach of fiduciary responsibilities if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

4.  *Judgments Against Trust Fund*

    Any money judgment against the Trust Fund shall be enforceable only against the Trust Fund entity and shall not be enforceable against any Trustee or other person, unless liability against the Trustee or other person, in his individual capacity, is established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

5.  *Participating Parties' Rights*

    Except as specifically provided for in this Trust Agreement or in the Retirement Benefit Plan, no participating employer, employer association, labor organization, employee, or beneficiary shall have any right, title, or interest in or to the Trust Fund, or in or to the contributions, or in or to the benefits provided.

    No participating employee shall be entitled to receive any part of the contributions in lieu of the benefits provided through the Retirement Benefit Plan, nor shall a participating employee who does not qualify for benefits, or his employer, have any claim to the con-

— 34 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 48

tributions which may have been paid on his behalf.

6.      *Cessation of Participation*

In the event a participating employer, employer association, or labor organization, or groups thereof, should cease their participation in the Trust Fund, there shall be no division or allocation of any of the monies or assets of the Trust Fund, except as may be specified in the Retirement Benefit Plan or required by law.

7.      *Protection of Trust Fund, Contributions, and Benefits*

No part of the Trust Fund (including the contributions) or the benefits payable under the Retirement Benefit Plan, shall be subject in any manner, by a participating employee or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

Further, no part of the Trust Fund (including the contributions), or the benefits payable under the Retirement Benefit Plan, shall be liable for the debts of a participating employee or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee or beneficiary, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

8.      *Reliance upon Written Documents*

The Trustees may act upon any written letter, report, certificate, instrument, or other document submitted to them by any participating employer, employer association, labor organization, employee, or beneficiary, or by any other person, where such document appears to be genuine and to be signed by the proper person or persons and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in any such document.

9.      *Agents of Trust Fund*

Unless authorized in a motion or resolution of the Trustees, no participating employer, employer association, or labor organization, nor any individuals employed thereby, shall have any authority to act or function for or on behalf of the Trust Fund or as agent thereof.

Likewise, unless authorized in a motion or resolution of the Trustees, no individual Trustee or other fiduciary shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

— 35 —

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 49

# ARTICLE XIII
# MISCELLANEOUS

1.   *Trust Fund Offices*

The Trust Fund shall maintain a principal office and suboffices, where necessary, in such locations as the Trustees may determine.

2.   *Applicable Laws and Regulations*

This Trust Agreement and the Retirement Benefit Plan shall be interpreted and administered in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, the Internal Revenue Code, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended. Any omissions or oversights will be resolved in accordnce with the laws and regulations.

References herein to particular sections of the above mentioned statutes shall include any regulations pertinent to such sections and shall encompass any subsequent amendments to such sections or regulations.

3.   *Notices*

Any written notice permitted or required by this Trust Agreement shall be personally delivered to the person for whom it is intended or sent to such person, at his residence or business address, by first class mail. Any such notice may also be delivered by email, facsimile transmission, or other electronic means available as may be allowed by law.

4.   *Severability*

If any provision of this Trust Agreement, or of the Retirement Benefit Plan is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement or the Retirement Benefit Plan.

5.   *Title — Words*

The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe, any term or provision hereof. Whenever any words are used herein in the masculine gender they shall be construed as though they were used in the feminine gender, and words in singular form shall be construed as though they were used in the plural form, in all cases where they would so apply.

6.   *Information to be Furnished and Distributed*

To aid the Trustees in the administration of the Trust Fund, the participating employers, employer associations and labor organizations shall furnish the Trustees with such information as they may determine including (a) copies of collective bargaining agreements, (b) contribution rates, (c) the identity of employees covered by collective bargaining agreements, subscription agreements or participation agreements, and their social security numbers, (d) reports on compensated hours for all employees who have worked in the bargaining unit or as a nonbargaining unit employee whether or not a contribution has been paid, (e) reports on all hours or shifts or wages which constitute the basis of the contribution made to the Retirement Benefit Plan as provided in the collective bargaining agreement, subscription agreement or participation agreement, and (f) reports on actual contributions owed broken down by each employee.

— 36 —

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 50

# ARTICLE XIV
## AMENDMENTS AND TERMINATION

1.   *Amendments*

This Trust Agreement may be amended by action of the Trustees, except that the Trustees shall make no amendment to Article III without the unanimous written consent of the Trustees and the remaining signatory parties (or their successors).

In the event that the Trustees should propose an amendment to Article III, they shall deliver copies thereof to the remaining signatory parties (or their successors). If any signatory party (or successor thereto) fails, within thirty (30) days, to respond to a written request for consent to any such amendment, that signatory party will be deemed to have waived its right to act upon such amendment.

2.   *Termination*

This Trust Agreement may be terminated, at anytime, by unanimous action of the Trustees and the remaining signatory parties (or their successors).

3.   *Allocation upon Termination*

If the Plan is terminated, all assets remaining in the Trust Fund after the payment of all expenses incurred in terminating or administering the Plan will be allocated to the benefit of participating employees, retired employees, and surviving spouses, according to the following order of priority:

(a)   First, the remaining assets shall be allocated equally to (1) benefits in pay status three years prior to termination at the lowest benefit level under the plan during the five years prior to termination, and *(2)* benefits which would have been in pay status three years prior to termination had the employee been retired (and had his benefits commenced then, at the lowest benefit level under the plan during the five years prior to termination.)

(b)   Second, the assets remaining after satisfying the benefits described in section (a) above shall be allocated equally to all other benefits guaranteed under Title IV of the Employee Retirement Income Security Act of 1974, (irrespective of the limitations on the amount of monthly benefits and regardless of the number of plans in which the employee participated).

(c)   Third, the then remaining assets shall be allocated equally to all other non-forfeitable (vested) benefits under the plan.

(d)   Fourth, the then remaining assets shall be allocated equally to all other benefits under the plan.

If the assets of the Trust Fund applicable to any of the above categories (a) and (b) are insufficient to provide fully the amount of the benefits in each category, the benefits otherwise payable shall be reduced proportionately.

If the assets of the Trust Fund applicable to category (c) are insufficient to provide fully the amount of the benefits in that category, the assets shall be allocated to the benefits of individuals which are described in that category on the basis of benefits of individuals which would have been described in category (c) under the Plan as in effect at the beginning of the 5-year period ending on the date of plan termination.

— 37 —

If the assets available for allocation under the preceding paragraph are sufficient to satisfy in full the benefits described in that paragraph, then for purposes of that paragraph, benefits of individuals described in that paragraph shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such 5-year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in the preceding paragraph and any assets remaining shall be allocated under that paragraph on the basis of the Plan as amended by the next succeeding plan amendment effective during such period.

The amount allocated under any of the priority categories listed above with respect to any benefit shall be adjusted for any allocation of assets with respect to that benefit under a prior category.

The amount allocated to each benefit shall be used to provide monthly retirement benefit payments through continuance of the Trust Fund, or through a new Trust Fund, or for the purchase of insurance annuity contracts; provided that, if the Trustees find that it is not practical or desirable under the circumstances to do any of the foregoing, they may provide for some other means of disposing of the allocations of the Trust Fund, including making payments in cash to the persons for whom such allocations have been made.

In no event shall any of the remaining monies or assets be paid to or be recoverable by any participating employer, employer association, or labor organization.

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 52

### SIGNATORY PARTIES *as of March 25, 1976*

| **Labor Organization Signatory Parties** | | *Employer Signatory Parties* | |
|---|---|---|---|
| International Printing & Graphic Communications Union | | Seattle Post-lntelligencer (Division of Hearst Publishing Company, Inc.) | |
| By | Sol Fishko | By | Gerald W. Hedman |
| Title | President | Title | Director of Personnel & Labor Relations |
| Date | March 25, 1976 | Date | March 25, 1976 |
| | | | |
| Printing Specialties and Paper Products Unions, IP & GCU | | Seattle Times Company | |
| By | Sol Fishko | By | Harold Fuhrman |
| Title | President, IP & GCU | Title | Vice President & General Mgr. |
| Date | March 29, 1976 | Date | March 25, 1976 |
| | | | |
| Seattle Web Pressman Local No. 26 IP & GCU | | Los Angeles Paper Box and Board Mills | |
| | | By | William H. Kewell, Jr. |
| By | George G. Peterson | Title | President |
| Title | 2nd V.P. #26 Seattle | Date | March 25, 1976 |
| Date | March 25, 1976 | | |
| | | Bay Area Paper Box Employers | |
| Los Angeles Commercial Pressmen Local No. 78, IP & GCU | | By | Edward H. Moore |
| | | Title | Secretary |
| By | Frank Calderone | Date | June 7, 1976 |
| Title | President | | |
| Date | March 25, 1976 | Printing Industries Association (Union Employers Section - Los Angeles) | |
| | | By | Jerry Maras |
| | | Title | Representative |
| | | Date | March 25, 1976 |

### SIGNATORY PARTIES *as of July 1, 1984*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressman No. 78, IP & GCU) |
| Graphic Communications Union No. 777 (successor to Printing Specialties and Paper Products Union, IP & GCU) | Seattle Times Company |
| | Bay Area Paper Box Employers |
| Seattle Newspaper Pressmen Local No. 26, GCIU | Printing Industries Association (Union Employers Section—Los Angeles) |

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 53

**Note:** On September 9, 1988, the three remaining employer signatory parties, the Seattle Times, the Bay Area Paper Box Employers, and the Printing Industries Association (Union Employers Section) - Los Angeles, agreed, in writing, to irrevocably and unconditionally transfer and assign to the incumbent employer trustees and their successors all of their rights and powers under this Trust Agreement and to forever resign their positions as employer signatory parties.

### SIGNATORY PARTIES *as of September 1, 1990*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No. 78, IP & GCU) |

### SIGNATORY PARTIES *as of September 1, 1999*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No, 78, IP & GCU) |

### SIGNATORY PARTIES *as of September 1, 2012*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No, 78, IP & GCU) |

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 54

**LIST OF TRUSTEES** *as of January 1, 1976*

| **Employer Trustees** | **Labor Organization Trustees** |
|---|---|
| Harold Fuhrman | Sol Fishko |
| Charles Woessner | Robert O'Neil |
| Joseph Conley | Jack McCormick |
| Jerry Maras | Don McCaughan |
| Frank Hurlburt | George Peterson |
| William Kewell, Jr. | Frank Calderone |
| | Wade Moore |

| **Alternate Employer Trustees** | John Millan |
|---|---|
| Gerald Hedman | Floyd F. Lisinski |
| Walter Taylor | |
| O.H. Rieth | **Alternate Labor Organization Trustees** |
| Lad Sabo | George Barnett |
| | George Gates |
| | Cy Quinn |

**LIST OF TRUSTEES** *as of September 1, 1990*

| **Employer Trustees** | **Labor Organization Trustees** |
|---|---|
| Joseph Conley | James Western |
| Harold Fuhrman | George Barnett |
| Jerry Maras | Wade Moore |
| O.H. Rieth | Floyd Lisinski |
| Donald Scheiber | William Roberts |
| David Stanger | James Norton |
| | Gary Dunmire |
| | Robert Bartlett |
| | William Clark |

**LIST OF TRUSTEES** *as of September 1, 1999*

| **Employer Trustees** | **Labor Organization Trustees** |
|---|---|
| Joseph Conley | Frank P. Young |
| Harold Fuhrman | William Clark |
| Hugh Gaylord | John A. Giannone |
| Jerry Maras | Stephen E. Northup |
| Thomas E. Phillips | James J. Norton |
| Nate Accardi | Edward A. Treacy |
| Jim Janiga | John D. Bachler |
| | **Alternate Labor Organization Trustees** |
| | George Osgood |
| | Ryan Sherard |
| | Paul E. Golden |

— 41 —

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 55

# Notes

EXHIBIT 1 to COMPLAINT - 56

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 57



GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 58

GCIU-Employer Retirement Fund

AMENDMENT NO. 1
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on August 20, 2013, did adopt the following amendment to Article IV, Section 2, "Constitution of a Quorum," of the Trust Agreement governing the GCIU-Employer Retirement Fund.  This Amendment is effective August 20, 2013.

Article IV, "Trust Fund Administration," Section 2, "Constitution of a Quorum," is hereby deleted and replaced with the following:

"2.   Constitution of a Quorum

To constitute a quorum at any meeting of the Trustees there must be present at least 50% of the Employer Trustees, or duly designated alternates, and 50% of the Labor Organization Trustees, or duly designated alternates."

Dated this 20th day of August 2013.

_____
Chairman

_____
Secretary

GCIU-Employer Retirement Fund

AMENDMENT NO. 2
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on February 18, 2015, did adopt the following amendment to Article VI, Section 9, "Specifically Permitted Investments," of the Trust Agreement governing the GCIU-Employer Retirement Fund. This Amendment is effective February 18, 2015.

Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," is hereby revised to read as follows:

"9.   Specifically Permitted Investments

* * *

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments and investment vehicles, including, but not limited to, mutual funds, REITS, private equity funds, infrastructure funds, private debt funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above."

Dated this  10th  day of April 2015.

_____
Chairman

_____
Secretary

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 60

GCIU-Employer Retirement Fund

AMENDMENT NO. 3
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund ("Fund"), at a meeting on November 17, 2015, did adopt the following Amendment to Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," of the Trust Agreement governing the GCIU-Employer Retirement Fund for compliance with the Multiemployer Pension Reform Act of 2014. This Amendment is effective January 1, 2015.

Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," is amended to delete the third paragraph in its entirety and replace it with the following:

**"20. Documents to Be Examined or Furnished**

\* \* \*

The Trustees shall also, upon written request by a participating employee or beneficiary, labor organization, or participating employer furnish to the participating employee or beneficiary, labor organization, or participating employer a copy of a) the current plan document (including any amendments thereto), b) the latest summary plan description of the plan, c) the current trust agreement (including any amendments thereto, d) the applicable collective bargaining agreement and/or participation agreement for the current Plan Year or any of the five immediately preceding Plan Years, e) the annual report for any Plan Year, f) the Trust Fund funding notice for any Plan Year, g) any periodic actuarial report (including any sensitivity testing) received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, h) any

1

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 61

quarterly, semi-annual, or annual financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, i) audited financial statements for the Trust Fund for any Plan Year, j) any application filed with the Secretary of the Treasury requesting an extension under Section 304(d) of the Act or Section 431(d) of the Internal Revenue Code of 1986 and the determination of such Secretary pursuant to such application, and k) in the case where the Trust Fund was in critical or endangered status under Section 305 of the Act for a Plan Year, the latest funding improvement or rehabilitation plan, and the contribution schedules applicable with respect to such funding improvement or rehabilitation plan (other than a contribution schedule applicable to a specific participating employer, if any), as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) of the Act with regard to individually identifiable information and proprietary information.

In accordance with Section 101(k) of the Act, such copies shall be furnished within 30 days of the request. In no case shall a participating employee or beneficiary, labor organization, or participating employer be entitled to receive more than one copy of any document in the paragraph above during any one 12-month period, or, in the case of any document described in items (e), (f), (g), (h), or (i) of the paragraph above, a copy of any document that as of the date on which the request is received by the Trust Fund, has been in the Trust Fund's possession for 6 years or more. The Trustees may impose a reasonable charge to cover copies, mailing, and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor."

* * *

Executed this 17th day of November 2015.

_____          _____
Chairman                          Secretary

2

FINAL
11/13/18

GCIU-Employer Retirement Fund

AMENDMENT NO. 4
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)


This is to certify that the current Labor Organization Trustees of the GCIU-Employer Retirement Fund did adopt the following Amendments to Article II, "Definitions," Section 12, "Signatory parties"; Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees"; Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity";   and Article XIV, "Amendments and Termination,"  Section  1,  "Amendments,"  and  Section  2, "Termination," of the Trust Agreement governing the GCIU-Employer Retirement Fund. This Amendment is effective November 13, 2018.

1.    Under Article II, "Definitions," Section 12, "Signatory parties," is hereby deleted in its entirety and the remaining Sections renumbered accordingly.

2.    Under Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees," is deleted in its entirety and replaced with the following:

"Article III
THE TRUSTEES

* * *

8.    Appointment  of  Successor  Labor  Organization Trustees

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be nominated by the President of the GCC-Conference of the IBT (or his named representative) and then approved/appointed by a majority of the current Labor Organization Trustees at the time of the nomination(s).

1

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 1 to COMPLAINT - 63

The GCC-Conference of the IBT shall be entitled to one Labor Organization Trustee. In addition, only one Labor Organization Trustee shall be permitted from the same local union and/or its affiliated District Council at any time."

3.    Under Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity," the second and third paragraphs are deleted in their entirety and replaced with the following:

"Article III
THE TRUSTEES

* * *

12.   Termination of Appointment by Appointing Entity

* * *

The appointment of a Labor Organization Trustee may be terminated, at any time, by a majority action of the current Labor Organization Trustees for the reasons set forth in Article III, Sections 13, 14, and 15.

The termination of a Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or Labor Organization Trustees, as applicable. Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's Administrative Office."

4.    Under Article XIV, "Amendments and Termination," Section 1, "Amendments," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

1.    Amendments

This Trust Agreement may be amended at any time by action of the Trustees."

2

5.   Under Article XIV, "Amendments and Termination," Section 2, "Termination," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

* * *

2.   Termination

     This Trust Agreement may be terminated, at any time, by unanimous action of the Trustees."

* * *

6.   All other ancillary references to the "remaining Signatory parties" and/or "Signatory party(ies) are hereby deleted and an appropriate notation will be reflected on page 40 of this Agreement.


     Executed this 13th day of November 2018 by the Labor Organization Trustees.


_____                _____
Ralph M. Meers                         John D. Bachler
as Alternate Trustee for               Labor Organization Trustee
Edward A. Treacy
Labor Organization Trustee


               _____
               George Tedeschi
               Labor Organization Trustee

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.          EXHIBIT 1 to COMPLAINT - 65

# EXHIBIT 2

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 66

Prepress 7081
Graphic professionals

7081
PG. 26



NOV 16 1992

# A G R E E M E N T

## BETWEEN

## KANSAS CITY

## GRAPHIC COMMUNICATIONS UNION

## LOCAL NUMBER 16-C

## AND

## UNION EMPLOYERS SECTION

## PRINTING INDUSTRIES

## ASSOCIATION OF KANSAS CITY

IN EFFECT:   MAY 1, 1992

EXPIRES ON:   APRIL 30, 1995

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 67

# I N D E X

| ARTICLE NUMBER | | ARTICLE TITLE TITLE | PAGE NUMBER |
|---|---|---|---|
| 4 | ... | ARBITRATION | 2 |
| 28 | ... | ASSISTANTS | 19 |
| 2 | ... | AUTOMATIC RENEWAL | 1 |
| 35 | ... | BEREAVEMENT | 25 |
| 17 | ... | BUSINESS REPRESENTATIVE | 8 |
| 32 | ... | CATASTROPHE | 23 |
| 16 | ... | CLASSIFICATION OF PRESSES | 8 |
| 26 | ... | COMBINATION JOBS | 11 |
| 1 | ... | CONTRACT | 1 |
| 29 | ... | COST OF LIVING | 19 |
| 38 | ... | DELINQUENT LIABILITY | 29 |
| 23 | ... | DISCRIMINATION | 10 |
| 41 | ... | DISCUSSION MEETING CLAUSE | 30 |
| 42 | ... | DUES CHECK OFF | 30 |
| 39 | ... | ENERGY CRISIS | 30 |
| 21 | ... | EVE OF HOLIDAY | 10 |
| 11 | ... | EXECUTIVE FOREMAN | 5 |
| 7 | ... | FOREMAN | 3 |
| 5 | ... | GCIU CONSTITUTION AND LAWS | 3 |
| 3 | ... | GRIEVANCE PROCEDURE | 1 |
| 30 | ... | HEALTH AND WELFARE | 20 |
| 37 | ... | JOINT APPRENTICESHIP COMMITTEE | 26 |
| 6 | ... | JURISDICTION | 3 |
| 22 | ... | JURY DUTY | 10 |
| 13 | ... | NEW EQUIPMENT | 6 |
| 12 | ... | NEW MANNING | 5 |
| 8 | ... | ONE DAY MINIMUM PAY | 4 |
| 19 | ... | OVERTIME | 9 |
| 20 | ... | PAID HOLIDAYS | 9 |
| 36 | ... | RETIREMENT FUND | 26 |
| 15 | ... | SANITATION | 7 |
| 33 | ... | SEPARABILITY | 23 |
| 31 | ... | SEVERANCE PAY | 23 |
| 10 | ... | SPECIAL CONDITIONS | 5 |
| 24 | ... | TRANSFERRING EMPLOYEES: PRESSMEN | 11 |
| 40 | ... | UNIFORMS | 30 |
| 14 | ... | UNION SECURITY | 7 |
| 34 | ... | VACATIONS | 23 |
| 25 | ... | WAGE SCALE - DAYS | 11 |
| 27 | ... | WAGE SCHEDULE | 12 |
| 18 | ... | WORKING HOURS | 8 |
| 9 | ... | WORKMANLIKE PERFORMANCE | 4 |

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 68

AGREEMENT

## Article  1 - CONTRACT

This Agreement made and entered into this First day of May, 1992 by and between the **UNION EMPLOYERS SECTION, PRINTING INDUSTRIES ASSOCIATION OF KANSAS CITY,** a list of which is attached hereto, Party of the First Part, and the **KANSAS CITY GRAPHIC COMMUNICATIONS UNION NUMBER 16-C,** a subordinate to the Graphic Communications International Union, Party of the Second Part, shall be effective beginning May 1, 1992 and ending April 30, 1995.

Notice of desire of either Party to this Agreement to readjust the Contract shall be given in writing at least sixty (60) days prior to April 30, 1995.

Any equipment, shop practices or conditions not covered by this Agreement and any adjustment by arbitration as a basis of a new agreemenet shall become effective at the anniversary date of this Contract.

## Article  2 - AUTOMATIC RENEWAL

Failure upon the part of either party to notify the other party as above stated, shall signify that this Agreement is to remain in full force and effect until the next anniversary date and then during such subsequent annual period the terms of this Agreement shall apply until one or the other party shall give notice to readjust as herein provided.

## Article  3 - GRIEVANCE PROCEDURE

Should a grievance arise between the Company and its Employees or between the Company and the Union as to the interpretation or application of the provisions of this Agreement, or questions which may arise as to wage scales, shop rules, or practices not specifically provided for in this Agreement, there shall be no suspension or stoppage of work.  A grievance as defined herein, other than a grievance relating to the NEW EQUIPMENT Article, shall be processed as follows:

FIRST STEP - The grievance shall be discussed between the Employee involved or the Shop Steward and the Foreman or Supervisor designated by the Employer to consider grievances in the department. If a settlement satisfactory to the parties cannot be reached within ten (10) working days of the occurrence on which the grievance is based, the

EXHIBIT 2 to COMPLAINT - 69

grieving party shall reduce the grievance to writing, stating the reasons for the grievance, the contract provisions allegedly violated, and the relief sought and submit it to the other party. If a written grievance is not given to the other party within ten (10) working days of the occurrence on which the grievance is based, no grievance may thereafter be filed regarding the occurrence. This waiver is specifically also applicable to discharges.

SECOND STEP - If the written grievance is received within ten (10) working days of the occurrence on which the grievance is based, as provided in Step One, the grievance will be discussed by an officer of the Local Union and a designated representative of the Company at a meeting which will be held within five (5) working days of the receipt of the written grievance.

THIRD STEP - If the grievance is referred to the Third Step, a written statement shall be sent by the aggrieved party to the other party and the designated representative of the Employers' Association at the conclusion of the Second Step setting forth all the pertinent facts with respect to such grievance, including the provisions of the Agreement which are allegedly violated.

A meeting of a Joint Standing Committee will be held within ten (10) working days of the receipt of the Third Step grievance. The Committee will consist of two representatives of the Union and two representatives of the Association. If agreement is reached by a majority of the Joint Standing Committee, it shall be reduced to writing and signed by the Committee.

If agreement cannot be reached at the Third Step Meeting the Union may appeal the grievance to arbitration. Should the Union decide to appeal a grievance to arbitration it must notify the other party within thirty (30) calendar days of the Third Step Meeting of the intention to proceed to arbitration.

## Article  4 - ARBITRATION

The grieving party shall notify the office of the Federal Mediation and Conciliation Service, care of the General Counsel, Washington, D.C. within ten (10) calendar days of the completion of the Third Step of the GRIEVANCE PROCEDURE and request submission of a list of five (5) arbitrators.

The arbitrator will be selected by each party alternately striking two names from the list and the remaining name shall become the arbitrator.  If the remaining name is unable to serve, another list of five names shall be requested from the Federal Mediation and Conciliation Service.

The fees and expenses of the arbitrator, including the cost of any transcript, shall be borne equally by the parties to the arbitration proceedings.

The arbitrator will not have the authority to render a decision which will add to, subtract from, or modify the specific provisions of the Contract.

The decision of the arbitrator shall be final and binding on the Company, the Union, and the Association.

## Article  5 - GCIU CONSTITUTION AND LAWS

This Contract shall not be construed to be in conflict with the current Constitution and Laws of the Graphic Communications International Union unless such constitution will conflict with any State or Federal Law or Regulation, in which case, such state or Federal Law or Regulation shall prevail.

## Article  6 - JURISDICTION

It is understood that the jurisdiction of this Contract extends over all printing presses, including, but not limited to gravure, offset and letterpress printing presses and associated devices, all work in connection with offset plate-making including camera operation, all darkroom work, stripping and layout subsequent to the copy camera, opaquing and platemaking.  This provision concerning offset presses and platemaking shall not apply to Employers who now operate offset presses or do platemaking under contract with any other union in effect as of January 1, 1942.  The First Party recognizes the Second Party as the traditional bargaining representative of its members.

## Article  7 - FOREMAN

Upon the request of the First Party, the Second Party shall supply journeymen capable of acting as Foremen.  The Foreman shall hire and discharge all help in the pressroom, provided that he shall notify the Employer before hiring or discharging any Employee.  The Foreman may discharge: (1) for incompetency, (2) for neglect of duty, (3) to reduce the force, (4) for violation of shop rules which have been

EXHIBIT 2 to COMPLAINT - 71

kept conspicuously posted and which in no way abridge the
Civil Rights of Employees or their rights under the accepted
Kansas City Graphic Communications Union Number 16-C.

The Union agrees it will not commit any act which will
cause the Employer to violate or be in violation of any
State or Federal Law.

## Article  8 - ONE DAY MINIMUM PAY

In no case shall less than one day's pay be paid for
a fractional day's work, except where the Employee lays
off through his own choice or is discharged for cause.
The only other exception to this would be that which is
covered in the CATASTROPHE Article.  It is understood that
when an Employee arrives late at the start of the shift,
leaves early, or takes longer than normal lunch period that
he is laying off through his own choice.  This provision
pertaining to late arrival does not apply to an Employee
who is called to work on short notice.  Regular men shall
not be permitted to lay off without furnishing a satisfactory
substitute.  All Employees working under this Agreement
must be notified of a layoff at least by 12 o'clock noon
of the day before the intended layoff on the day shift.
The night crew must be notified of a layoff the preceding
night at the time they report for work.  If not notified
properly they shall be allowed to work the following shift
or be paid an additional day's pay.  All Employees working
under this Agreement shall notify the Foreman of any intended
layoff on the same schedule of advance notice.

## Article  9 - WORKMANLIKE PERFORMANCE

It is agreed by said Party of the Second Part that
for and in consideration of the covenants entered into and
agreed to by said Parties of the First Part, that said Party
of the Second Part will, so far as possible to do so, at
all times during the life of this Agreement truly and faith-
fully discharge the obligations imposed upon it; and to
do the work necessary in the pressrooms of the Party of
the First Part in a workmanlike and satisfactory manner
and Second Party further agrees to observe all rules and
regulations established by the First Parties in the various
plants not inconsistent with the terms of this Agreement,
and to exercise strict diligence in compelling its members
to observe the rules and regulations established by the
First Parties as in effect in the plants in which they are
employed, and that any acts of negligence, carelessness,
inefficiency, or willful disregard of rules, upon being
reported to Party of the Second Part, will be promptly acted
upon.  Nothing in this paragraph shall be construed to
require either party to violate any State or Federal Law.

4

There shall be no pay for time spent in Chapel
Meetings during regular working hours.

## Article 10 - SPECIAL CONDITIONS

In shops where there are two Cylinder presses over
24 inches from bearer to bearer in operation, or one
Cylinder press over 24 inches and two or more Platen
presses, or one or more Rotary presses, or one or more
Offset presses, or when there are two or more pressmen
employed, one shall be Foreman, at Thirty-Five (35) cents
per hour more than the highest prevailing wage rate in the
department.  When two or more Journeymen in the Plate
Preparatory Dept. are employed, one shall be Foreman and
shall receive Thirty-Five (35) cents per hour more than
the highest wage rate in the department.  It is agreed that
only those presses having forms on them shall be construed
as being in operation.  When Employees covered by this
Agreement work on separate floors, each floor shall be
considered a separate department and shall require an
individual Foreman.

## Article 11 - EXECUTIVE FOREMAN

If a Foreman is employed in a supervisory or executive
capacity, he shall perform any work in the pressroom,
provided that the complement of men shall be maintained.
When the Employer is unable to secure the required number
of qualified pressmen, the supervisory or executive Foreman
shall be permitted to operate presses.  It is understood
when a supervisory or executive Foreman is on vacation
or absent, a supervisory or executive Foreman shall be
appointed to take his place.

## Article 12 - NEW MANNING

The complement of persons required to operate a 4-Color
Press, 36" up to and including 42", shall be one 1st Pressman
and one 1st Assistant and one 2nd Assistant.

The Company shall not lay off or terminate any other
permanent Employee in the department solely as a result
of any change or reduction of complement.

If the department is being reduced due to lack of work
the normal reduction procedures will be followed.

A Five-Color or Six-Color 35" up to and including 42"
when running two units or less, the 2nd Pressman can be
removed from the Press to do other pressroom journeyman
work, providing there has been no reduction in the work

force solely for this reason, and no reduction in his rate.

A Five-Color 36" up to and including 42" shall be manned with one 1st Pressman, one 2nd Pressman, and one Assistant, wage rates for press appear in Wage Schedule.

A Six-Color 36" up to and including 42" shall be manned with one 1st Pressman, one 2nd Pressman, One Assistant, and One Fly Boy when needed. Wage rates for press appear in Wage Schedule.

Two-Color 19 x 25 and 23 x 30½ presses shall be manned with one Journeyman Pressman, wage rates for these two press sizes appear in the Wage Schedule.

A Single-Color 36" press shall be manned with one Journeyman Pressman, wage rate for this press appears in Wage Schedule.

In consideration of these changes the Company agrees that any permanent Employee affected by any change in complement shall not be laid off or terminated due solely to any change in complements and shall retain the rate set for his classification in effect at the time of the change and receive any increase in rate for that classification as required during the life of the Contract.

## Article 13 - NEW EQUIPMENT

In the event of the introduction of new processes or new equipment not already covered by the schedules included in this Agreement, the Employer agrees to give the Union and the Executive Secretary of the Union Employers Section, Printing Industries Association of Kansas City, at least thirty days notice prior to purchase of such equipment.

The Employer and Union agrees that the complement of persons required and wage rates of those persons relating to such equipment shall be determined by mutual consent between the parties. If the parties fail to achieve agreement relative to these matters prior to the purchase of such equipment, the issue shall be referred to the Joint Standing Committee.

Should the Joint Standing Committee fail to agree upon a settlement within thirty days after first meeting, the matter shall be considered a subject for arbitration in accordance with Article 3 of this Agreement.

This section does not preclude the parties from mutually agreeing to a trial period prior to a final agreement.

At the end of this trial period the wage rates and

6

manning in effect at the time shall be considered the final
agreement, unless either party notifies the other party
in writing, within ten days after completion of the trial
period, that the wage rates and/or manning are unacceptable.
If the parties cannot resolve the difference within five
days, the matter then may be referred to the Joint Standing
Committee.  Should the Joint Standing Committee fail to
agree upon settlement within fifteen days, the matter shall
be considered subject for arbitration in accordance with
Article 3 of this Agreement.

## Article 14 – UNION SECURITY

The Company agrees to require as a condition of
continued employment that all present Employees of the
Company subject to the provisions of this Agreement must
become members of the Union after the thirtieth (30th) day
following the effective date of this Article Fourteen and
all new additional Employees who become subject to the
provisions of this Agreement must become members of the
Union after the thirtieth (30th) day following the beginning
of such employment or the effective date of this Article
Fourteen, whichever is the latter and all such Employees
must remain members of the Union in good standing thereafter
by payment of dues so long as they remain on the Company's
payroll.

If any present or future Employee shall apply for Union
membership and shall be refused such membership by the Union,
his continuance thereafter in the employ of the Company
shall not be cause for discharge under this Agreement,
nor subject the Company to any claim by the Union of a breach
of this Agreement by the Company and the same case of any
other union member deprived by the Union of his membership
for any cause other than the non-payment of his periodic
union dues and the initiation fee uniformly required as
condition of acquiring or retaining membership.

The provisions of this section shall not be applicable
with respect to employment within the state of Kansas until
such time as the present right-to-work Kansas Constitutional
amendment ceases to become effective through repeal, Federal
legislation or otherwise.

## Article 15 – SANITATION

The following sanitary conditions shall be maintained
by Party of the First Part:  Sanitary drinking facilities
must be furnished.  Clean Towels and soap must be supplied
at all times.  Wash basins must be cleaned every day.
Toilets must be scrubbed at least twice a week.  Floors
must be kept clean.  There shall be proper ventilation where

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 75

spray guns are being used.

A three-man committee shall be appointed by the Party of the Second Part to cooperate in the maintenance of sanitary conditions at regular intervals and investigate complaints.

## Article 16 - CLASSIFICATION OF PRESSES

Platen units shall include all platen presses up to and including $14\frac{1}{2}$ x $22\frac{1}{2}$ either with or without feeder attachments.

Cylinder presses shall include all presses equipped with cylinders, regardless of size, not including rotary or offset presses.

It is understood that all cylinder letter presses over 29 inches shall be classified a large cylinder presses.

All cylinder letter presses 29 inches and under shall be classified as job cylinder letter presses.

The factory built inside bed measurements between bearers shall be the basis upon which the size of letter press shall be determined.

The basis of measuring offset presses shall be sheet size.

## Article 17 - BUSINESS REPRESENTATIVE

The Business Representative or duly authorized representative of Kansas City Graphic Communications Union Number 16-C, upon application at the office, shall be entitled to enter any pressroom during working hours to investigate complaints of violation of this Agreement, provided he conducts his business with the Foreman or Chapel Chairman and in no way interferes with production.

## Article 18 - WORKING HOURS

The standard work week shall be thirty-seven and one-half ($37\frac{1}{2}$) hours, composed of four (4) eight hour shifts each, Monday through Thursday, and Friday shall be a short shift of five and one-half ($5\frac{1}{2}$) hours, unless the Company proposes a change which must be approved by the Employees of the plant by a secret election, approved by a two-thirds (2/3) majority of the Employees and held by the Union on the Company premises. The work week shall begin on the first shift reporting Monday morning. The standard day

8

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 76

shift as established above shall be between the hours of
7:00 A.M. and 6:00 P.M.  The standard first night shift
as established above shall be between the hours of
3:00 P.M. and 8:00 P.M.  When three (3) shifts are being
operated, the hours per day for the second night shift shall
be the same as established above.

A firm cannot change its regularly scheduled starting
time without at least one week's advance notice.  When the
hours of the work day are reduced, the Employer agrees not
to lengthen the lunch period.


## Article 19 - OVERTIME

During the life of this Contract all time worked in
excess of the hours set out in Article 18, on any day or
night, from Monday to and including Friday, and all time
worked in excess of five (5) days per week "and all time
worked outside of the regular hours established by the
office shall be paid at the rate of time and one-half for
the first four (4) hours and double time thereafter."  One
week's notice shall be given before a change in hours is
made, such working hours not to be in violation of the
standard 7:00 A.M. to 6:00 P.M. work day.  Work performed
on the sixth day or on Saturday shall be paid for at the
rate of time and one-half for the first four (4) hours
worked and double time thereafter.  Work performed on the
seventh day or on Sunday, shall be paid for at the rate
of double time.

All overtime worked at the rate of time and one-half
with the exception of Saturday must be started within
one-half hour of the regular quitting time established
by the office, otherwise double time shall apply.

Employees shall have the right to refuse additional
overtime after having worked a total of sixty (60) hours
in any work week.

Except in an emergency, the Foreman shall give notice
by lunch time of the decision to work overtime that shift.


## Article 20 - PAID HOLIDAYS

Effective November 1, 1975 - There shall be nine (9)
paid holidays:  New Year's Day,  Good Friday,  Decoration
Day,  Fourth of July,  Labor Day,  Thanksgiving Day,
December 24th,  Christmas Day, and December 31st,
regardless on which day they fall.

Holidays falling on Sunday will be celebrated on Monday.
All holiday premiums will be applicable on both the day

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 77

of the holiday and the day celebrated as the holiday.

Members shall be paid straight time rates for the foregoing holidays, or such days observed as such when no work is performed. Members to be eligible for such paid holidays must have worked the preceding and the following day unless excused by the Foreman. Such excused absences, including those because of illness, disability, or military leave shall be limited to 15 working days immediately preceding the holiday. In the event any Employee is called upon to work on any of such paid holidays he shall receive, in addition to such compensation, double the straight time rate of pay for such hours. Nothing contained in this section shall be construed as applying to a regular night shift whose time may overlap a holiday.

Temporary layoff or illness of Employees with one year continuous service will not cause loss of holiday pay, if such an Employee is at work within fifteen (15) calendar days prior to or following that holiday.

## Article 21 - EVE OF HOLIDAY

When work is performed on the night commencing with the eve of a holiday as specified herein by regular night men, single time shall apply, provided no work is performed the following night, but if work is performed the following night, then double time shall apply for work performed on the night of said legal holiday, except provisions concerning the nine foregoing paid holidays in Article 20.

## Article 22 - JURY DUTY

Employees on the payroll of a firm thirty (30) days or more shall be eligible for the difference in their regular straight time pay and compensation paid by the court while serving as a member of a jury. Such pay shall be for the first five days in any calendar year that an Employee serves on a jury, Monday through Friday. An Employee selected for Jury Duty shall notify his Employer at least ten (10) days prior to the reporting date set for Jury Duty and must provide stisfactory evidence that he performed the service before claiming compensation for such service.

## Article 23 - DISCRIMINATION

The parties to this Agreement agree to continue their policy of no unlawful discrimination against any Employee or applicant because of race, creed, religion, color, age, sex, national origin, disability, or veteran status in regard to employment, advancement, working conditions, rates of

EXHIBIT 2 to COMPLAINT - 78

pay, acceptance into Union membership or selection for apprenticeship openings. The Company shall have the right to make reassignments and other accommodations as required to comply with the Americans With Disabilities Act.

The use of the male gender in certain clauses of this Contract is done for convenience purposes and does not imply any preference of male to female Employees.

## Article 24 - TRANSFERRING EMPLOYEES:  PRESSMEN

A pressman may be changed from one press to another at the option of the Foreman provided the required number of pressmen are employed. In the event of a press working overtime the pressman employed on said press shall be given the preference for the overtime worked.

## Article 25 - WAGE SCALE -DAYS

It is understood and agreed by and between the parties of this Agreement that not less than the following hourly and weekly rate of wages shall be paid to all journeymen pressmen covering the periods as herein specified, and that the sheet size shall be the basis upon which the size of presses shall be determined.

## Article 26 - COMBINATION JOBS

Not less than the following hourly or weekly rate of wages shall be paid journeymen pressmen and press assistants as hereafter set out, based on the following classification of presses:

Article 27 – WAGE SCHEDULE

### LETTERPRESS

| | 37½ Hour Week May 1, 1992 Hourly  Weekly | COLA Per 5/10 Of One POINT | 5-1-93 | 5-1-94 | 4-30-95 |
|---|---|---|---|---|---|
| One Journeyman Pressman | 16.31   611.63 | 4½¢ | _____ | _____ | _____ |

When a Pressman is operating two Presses and there are numbering machines on one or both, then unless additional help is supplied to watch the numbering machines, the Employer shall assume resposibility for spoilage.

### ROTARY LABEL PRESS

| | Hourly  Weekly | | | | |
|---|---|---|---|---|---|
| One Journeyman Pressman | 16.31   611.63 | 4½¢ | _____ | _____ | _____ |

### OFFSET PRESS

| | Hourly  Weekly | | | | |
|---|---|---|---|---|---|
| 1 Single Color less than 17" x 22" One Journeyman Pressman | 15.31   574.13 | 4½¢ | _____ | _____ | _____ |
| 1 Single Color 17" x 22" up to and including 30½" One Journeyman Pressman | 17.76   666.00 | 4½¢ | _____ | _____ | _____ |
| 1 Single Color 30½" x 33 7/8" One Journeyman Pressman | 18.00   675.00 | 4½¢ | _____ | _____ | _____ |
| 1 Single Color 33 7/8" up to and including 36" One Journeyman Pressman | 18.24   684.00 | 4½¢ | _____ | _____ | _____ |
| 1 Single Color 37" up to & including 54" One Journeyman Pressman | 20.00   750.00 | 6¢ | _____ | _____ | _____ |
| 1 Assistant 80% | 16.00   600.00 | 80% | _____ | _____ | _____ |

12

EXHIBIT 2 to COMPLAINT - 80

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

## OFFSET

| | 37½ Hour Week May 1, 1992 Hourly | Weekly | COLA Per 5/10 Of One POINT | 5-1-93 | 5-1-94 | 4-30-95 |
|---|---|---|---|---|---|---|
| 1 Two-Color 11" x 17" or less One Journeyman Pressman | 15.58 | 584.25 | 4½¢ | _____ | _____ | _____ |
| 1 Two-Color 19" x 25" One Journeyman Pressman | 18.88 | 708.00 | 4½¢ | _____ | _____ | _____ |
| 1 Two-Color 23" x 30½" One Journeyman Pressman | 19.42 | 728.25 | 4½¢ | _____ | _____ | _____ |
| 1 Two-Color 30½" up to and including 45" One Journeyman Pressman | 20.23 | 758.63 | 6¢ | _____ | _____ | _____ |
| 1 Assistant 80% | 16.18 | 606.75 | 80% | _____ | _____ | _____ |
| 1 Two-Color 45" up to and including 54" One Journeyman Pressman | 20.37 | 763.88 | 6¢ | _____ | _____ | _____ |
| 1 Assistant 80% | 16.30 | 611.25 | 80% | _____ | _____ | _____ |
| 1 Three-Color 36" up to and including 42" One Journeyman Pressman | 20.69 | 775.88 | 6¢ | _____ | _____ | _____ |
| 1 Assistant 80% | 16.55 | 620.63 | 80% | _____ | _____ | _____ |
| 1 Four-Color 19" x 25" One Journeyman Pressman | 21.17 | 793.88 | 6¢ | _____ | _____ | _____ |
| 1 Four-Color 36" up to and including 42" One Journeyman Pressman | 21.17 | 793.88 | 6¢ | _____ | _____ | _____ |
| One First Assistant 80% | 16.94 | 635.25 | 80% | _____ | _____ | _____ |
| One Second Assistant 75% | 15.88 | 595.50 | 75% | _____ | _____ | _____ |

13

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 81

OFFSET

|  | 37½ Hour Week May 1, 1992 Hourly Weekly | COLA Per 5/10 Of One POINT | 5-1-93 | 5-1-94 | 4-30-95 |
|---|---|---|---|---|---|

A Four-Color press manned with a 1st Pressman, one 1st Assistant
and one 2nd Assistant, 36" up to and including 42" when running
two units or less, the 1st Assistant can be removed from the
press to do other pressroom work, providing there has been no
reduction in the work force solely for this reason, and at his
present rate or rate of job transferred to, if higher.

| 1 Four-Color 42" up to and including 50" One Journeyman Pressman | 21.17 | 793.88 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| One Second Pressman 88% | 18.63 | 698.63 | 88% | _____ | _____ | _____ |
| 1 Assistant 80% | 16.94 | 635.25 | 80% | _____ | _____ | _____ |
| 1 Five-Color 36" up to and including 42" One Journeyman Pressman | 21.39 | 807.13 | 6¢ | _____ | _____ | _____ |
| One Second Pressman 88% | 18.82 | 705.75 | 88% | _____ | _____ | _____ |
| 1 Assistant 80% | 17.11 | 641.63 | 80% | _____ | _____ | _____ |

When running two units or less, the 2nd Pressman can be removed
from the press to do other pressroom journeyman work, providing
there has been no reduction in the work force solely for this
reason, and at his present rate or rate of job transferred to,
if higher.

| 1 Six-Color 36" up to and including 42" One Journeyman Pressman | 21.61 | 810.38 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| One Second Pressman 88% | 19.02 | 703.25 | 88% | _____ | _____ | _____ |
| 1 Assistant 80%" | 17.29 | 648.38 | 80% | _____ | _____ | _____ |
| 1 Fly Boy 50% (When needed) | 10.81 | 405.38 | 50% | _____ | _____ | _____ |

14

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 82

OFFSET PRESS

|  | 37½ Hour Week<br>May 1, 1992<br>Hourly Weekly | COLA<br>Per 5/10<br>Of One<br>POINT | 5-1-93 | 5-1-94 | 4-30-95 |
|---|---|---|---|---|---|

When running two units or less, the 2nd Pressman can be removed from the press to do other pressroom journeyman work, providing there has been no reduction in the work force solely for this reason, and at his present rate or rate of job transferred to, if higher.

1 Seven-Color 36" up to and including 42"

| One Journeyman<br>Pressman | 21.83 | 818.63 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| One Second<br>Pressman 88% | 19.21 | 720.38 | 88% | _____ | _____ | _____ |
| 1 Assistant 80% | 17.46 | 654.75 | 80% | _____ | _____ | _____ |
| 1 Fly Boy 50%<br>(When needed) | 10.92 | 409.50 | 50% | _____ | _____ | _____ |

When running two units or less, the 2nd Pressman can be removed from the press to do other pressroom journeyman work, providing there has been no reduction in the work force solely for this reason, and at his present rate or rate of job transferred to, if higher.

WEB FED PRESS

1 Web Normal Plate 17" x 27", 8 or 10 Plate
Single Roll  One Journeyman

| Pressman | 21.17 | 793.88 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| One Second<br>Pressman 88% | 18.63 | 698.63 | 88% | _____ | _____ | _____ |
| 1 Assistant 80% | 16.94 | 635.25 | 80% | _____ | _____ | _____ |

1 Web Normal Plate, 17" x 27", 8 or 10 Plates,
Single Roll with in-line equipment
One Journeyman

| Pressman | 21.17 | 793.88 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| One Second<br>Pressman 88% | 18.63 | 698.63 | 88% | _____ | _____ | _____ |
| 1 Assistant 80% | 16.94 | 635.25 | 80% | _____ | _____ | _____ |

The above manning are not to do any packers work at any time.

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 83

WEB FED PRESS

| | 37½ Hour Week<br>May 1, 1992<br>Hourly Weekly | COLA<br>Per 5/10<br>Of One<br>POINT | 5-1-93 | 5-1-94 | 4-30-95 |
|---|---|---|---|---|---|

Company Supervisors can do this work until packers are available.

| Packers 35% | 7.41 | 277.88 | 35% | _____ | _____ | _____ |
|---|---|---|---|---|---|---|

Supervisors will determine the number of packers and when needed.

1 Web Normal Plate, 17" x 27", 8 or 10
Plates, Double Roll   One Journeyman

| Pressman | 21.17 | 793.88 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| One Second<br>Pressman 88% | 18.63 | 698.63 | 88% | _____ | _____ | _____ |
| 1 Assistant 80% | 16.94 | 635.25 | 80% | _____ | _____ | _____ |
| 1 Fly Boy 50% | 10.59 | 397.13 | 50% | _____ | _____ | _____ |

Fly Boy can be removed from the press when running single roll
and sheeting.  This is not to be used as a reduction in manning,
the Fly Boy shall work somewhere in the pressroom at his present
rate or a higher rate if transferred to a job with a higher
rate.

1 Web Normal Plate, 17" x 27", 12 Plate,
Double Roll with two folding and delivering
One Journeyman

| Pressman | 21.43 | 803.63 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| One Second<br>Pressman 88% | 18.86 | 707.25 | 88% | _____ | _____ | _____ |
| 1 Assistant 80% | 17.14 | 642.75 | 80% | _____ | _____ | _____ |
| 1 Fly Boy 50% | 10.72 | 402.00 | 50% | _____ | _____ | _____ |
| 1 Second<br>Fly Boy 50% | 10.72 | 402.00 | 50% | _____ | _____ | _____ |

The 2nd Fly Boy to be used when both folders are being used.
Fly Boy can be removed from the press when running single roll
and sheeting.  This is not to be used as a reduction in manning,
the Fly Boy shall work somewhere in the pressroom at his present
rate or a higher rate if transferred to a job with a higher
rate.

16

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 84

WEB FED PRESS

| | 37½ Hour Week<br>May 1, 1992<br>Hourly | Weekly | COLA<br>Per 5/10<br>Of One<br>POINT | 5-1-93 | 5-1-94 | 4-30-95 |
|---|---|---|---|---|---|---|
| 1 Web Normal Plate, 30" x 38", 4 Plate | | | | | | |
| One Journeyman<br>Pressman | 21.01 | 787.88 | 6¢ | _____ | _____ | _____ |
| 1 Assistant 80% | 16.81 | 630.38 | 80% | _____ | _____ | _____ |
| One Second<br>Assistant 75% | 15.76 | 591.00 | 75% | _____ | _____ | _____ |
| 1 Web Normal Plate 30" x 38", 8-10 Plate | | | | | | |
| One Journeyman<br>Pressman | 21.83 | 818.63 | 6¢ | _____ | _____ | _____ |
| One Second<br>Pressman 88% | 19.21 | 720.38 | 88% | _____ | _____ | _____ |
| One First<br>Assistant 80% | 17.46 | 654.75 | 80% | _____ | _____ | _____ |
| One Second<br>Assistant 75% | 16.37 | 613.88 | 75% | _____ | _____ | _____ |
| 1 Fly Boy 50% | 10.92 | 409.50 | 50% | _____ | _____ | _____ |

When running two units or less, the 2nd Pressman can be removed
from the press to do other pressroom journeyman work, providing
there has been no reduction in the work force solely for this
reason, and at his present rate or rate of job transferred to,
if higher.

Fly Boy can be removed from the press when running single roll
and sheeting.  This is not to be used as a reduction in manning,
the Fly Boy shall work somewhere in the pressroom at his present
rate or a higher rate if transferred to a job with a higher
rate.

Additional Fly Boys, if needed, will be furnished by Local No.
16-C at Fly Boy rate.

If additional help is needed, the Company can use other help
in the pressroom, from Local 16-C, on the Press, but their wages
will not be lowered.

17

## ROTARY TRIMMER

When Rotary Trimmer, trimming 2, 3 or 4 sides, is attached to
any Press – the wages will be $1.00 per hour increase for the
1st Pressman;  88% of the 1st Pressman wage for the 2nd Pressman;
80% of the 1st Pressman wage for the 1st Assistant;  75% of
the 1st Pressman wage for the 2nd Assistant, and 50% of the
1st Pressman wage for the Fly Boy over the wages of that
particular Press.

If boxing of product produced is done at the end of the Press,
this will not be done by members of the regular printing crew.
Packers will be employed from Local 16-C as needed to keep up
with the operations at 45% of the Journeyman's rate.

### DIDDE – GLASER

|  | 37½ Hour Week May 1, 1992 Hourly | Weekly | COLA Per 5/10 Of One POINT | 5-1-93 | 5-1-94 | 4-30-95 |
|---|---|---|---|---|---|---|
| 1 Four-Color 11" x 17½" One Journeyman Pressman | 17.14 | 642.75 | 4½¢ | _____ | _____ | _____ |
| 1 Fly Boy 50% (When needed) | 8.57 | 321.38 | 50% | _____ | _____ | _____ |

### PLATE PREPARATORY DEPARTMENT

| Cameraman, Color Separation, Halftone One Journeyman | 21.06 | 789.75 | 6¢ | _____ | _____ | _____ |
|---|---|---|---|---|---|---|
| Strippers:  Color Halftone – Film & Paper One Journeyman | 20.58 | 771.75 | 6¢ | _____ | _____ | _____ |
| Plate Department:  Photo Composer – Step or Peg Board – Plate Maker One Journeyman | 20.46 | 767.25 | 6¢ | _____ | _____ | _____ |

### PREMIUMS

|  | FLY BOYS & PACKERS | ASSISTANTS | PRESSMAN |
|---|---|---|---|
| 1st Night Shift | .25 | .30 | .40 |
| 2nd Night Shift | .50 | .60 | .75 |

18

## Article 28 - ASSISTANTS

**MAKE READY.** An assistant shall be required to assist the pressmen in the process of make ready and the complement of men required when presses are running shall be employed while presses are being made-ready. They shall be subject to the direction of the pressman in charge to do the work required in the operation of such presses or make-ready. Whenever the Party of the Second Part shall be unable or fail to fulfill his convenant in this respect the Party of the First Part shall be entitled to obtain anywhere the help required until such time as the Party of the Second Part can furnish competent help. Any assistant used on any press shall be a member of Kansas City Graphic Communications Union Number 16-C, provided they can supply help.

When an assistant operates a press as a pressman he shall receive the contract rate for the press he operates.

**TRANSFERRING EMPLOYEES:** An assistant may be changed from one press to another at the option of the Foreman provided the required number of assistants is employed. In the event of a press working overtime, the assistant employed on said press shall be given the preference for the overtime worked.

**FOLDING MACHINE:** Where a folding machine is operated under the jurisdiction of the pressroom, an Employee represented by Kansas City Graphic Communications Union Number 16-C, subordinate to the Graphic Communications International Union, shall be employed.

## Article 29 - COST OF LIVING

During the life of the Contract the wage rate of each Employee will be increased or decreased in accordance with the rise or fall of the Revised Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) 1982-1984=100. New Series for U.S. City Average issued by the United States Bureau of Labor Statistics, but at no time will the rates be below the wage scales appended to this Contract, except as provided elsewhere in this section. Adjustments will be made annually when the U.S. City Average indexes are received. Adjustments when required will become effective as per Wage Schedule, May 1, 1993, May 1, 1994, and April 30, 1995.

For each 5/10 of one (1) point rise in the index above the base of February, 1992 index (136.4) there will be an increase in the wage rates; likewise, when the index

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

drops back 5/10 of one (1) point there will be a decrease in the wage rates as defined in the wage schedule of the various classifications, but in no event below the rates appended hereto, except as provided elsewhere in this section.

On April 30, 1995 the COLA will be folded into the basic rates and become the new wage rates as of April 30, 1995.

The amount of any cost of living increase in effect at the time shall be included in computing overtime, night shift, holiday and vacation rates of pay.

Apprentices and employees working on the percentage of the negotiated wage for their classification will receive the hourly increase as prescribed in the Wage Schedule.

No adjustments, retroactive or otherwise shall be made due to any correction which later may be made in the published figures for the BLS Revised Consumer Price Index.

In the event the BLS discontinues the issuance of the Revised Consumer Price Index used by the parties for computing Cost of Living Adjustments, the parties shall substitute for such Index, the Index issued by the Bureau to replace the discontinued Index.

## Article 30 - HEALTH AND WELFARE

The Company shall contribute $388.91 per month per employee retroactive to March 1, 1992, and contribute $413.91 per month per employee effective March 1, 1993, and contribute $438.91 per month per employee effective March 1, 1994, and contribute $463.91 per month per employee effective March 1, 1995 to the GCIU Local 16-C and 60-B Health & Welfare.  Said contributions are to be used for the purchase, for the benefit of such employees and their dependents, of the sickness and accident, hospitalization, surgical, disability, life insurance or similar health benefits from a nationally recognized insurance company or companies.  The following shall be eligible employees:

(a)  Each employee who works continuously as a regular full-time employee for an employer covered by this agreement shall be an eligible employee and shall continue as such until the end of the calendar month following that calendar month in which he/she ceases to work continuously as a regular full-time employee.

(b)  Each employee who works at least ten (10) days for one or more employers covered by this agreement during a calendar month in which he/she is an eligible

20

EXHIBIT 2 to COMPLAINT - 88

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

employee hereunder shall be deemed an eligible employee during all of the succeeding calendar month.

(c)  Each employee who works at least ten (10) days for one or more employers covered by this agreement during the calendar month following a calendar month in which he/she was not an eligible employee shall be deemed an eligible employee during the calendar month following that month in which such work was performed.

(d)  An eligible employee who is laid off and has had one year or more of continuous service with the same employer shall have his/her Health and Welfare Insurance premium paid by the employer, for not more than three (3) months from the last day of the calendar month in which the lay-off occurred or until gainfully employed where the employee and his/her family are covered or the employee is employed in another graphic arts firm.

(e)  An eligible employee who is temporarily disabled because of a certified sickness or injury and has had one year or more of continuous service with the same employer shall have his/her Health and Welfare Insurance premium paid by the employer, while disabled for up to six (6) months from the last day of the calendar month in which the temporary disability began.

(f)  An employer will cover an employee with the above Health and Welfare Insurance, who is off work due to an on the job injury, for a maximum of three (3) months following the injury.

(g)  Any employee after becoming an eligible employee who ceases to be an eligible employee because of illness or other good cause approved by the Local Fund Trustees may with the consent of the Local Fund Trustees, and for such length of time as the Local Fund Trustees specifies, continue his/her insurance coverage in effect by making regular premium payments.

(h)  An employer shall pay one tenth (1/10) of the Health and Welfare Premium for each day a new or temporary employee works less than ten (10) days for him. Such an employee may purchase insurance coverage for himself/herself for the following month less ten percent (10%) of the cost of the premium for each day he/she works for a participating employer making contributions on his/her behalf.  Employees desiring to purchase their own insurance under this provision must make application and payment for this coverage within four (4) working days after the end of the month he/she worked to be eligible for such coverage.

(i)  If the employer is in default in the payment

21

required under this Section for more than thirty (30) days, it shall be liable for and agree to pay such legal, court and/or other costs incurred in collection proceedings.

(j)  The employer agrees to be bound by the terms of the Agreement and Declaration of Trust establishing the aforesaid Fund as the same may be amended from time to time, and the rules, regulations and plans adopted by the Trustees from time to time.  The employer further agrees that the employer Trustees designated under such Agreement and Declaration of Trust are so designated as employer Trustees in its behalf.

(k)  The parties agree that the benefits payable under such Fund shall in no event be terminated solely by reason of strike or lockout.

(l)  In the event that the United States Congress shall enact a law which becomes effective during the term of this Agreement, pursuant to which there would be a duplication of coverage between the present Plan and the program enacted by any national health law, contributions to Locals 16-C and 60-B Health and Welfare Fund shall nevertheless continue to be paid by the employer.  In accordance with the provisions of this Section and the Trust Agreement, the coverage shall be expanded to include any benefit which may lawfully be provided by such a Welfare Fund.

1.  Neither the Union Employers Section, Printing Industries Association of Kansas City, any employer, the Union nor the Trustees of the Trust, individually or collectively, shall be responsible or liable for the form, validity, sufficiency, or effect of any contract or policy for insurance benefits which have been or which may be entered into or the inability or insufficiency of the assets of the Trust or insurance carrier to pay any benefits.

2.  Neither the Union Employers Section, Printing Industries Association of Kansas City nor any employer shall be liable in any matter under the Health and Welfare provisions of this agreement except for the liability of an individual employer to pay premiums as provided in this agreement.  The liability of any individual employer is limited solely to the payments required under this agreement with respect to contributions on behalf of his own eligible employees, and in no event shall such employer be liable for any portion of the contributions due from other employers.

3.  Neither the Union Employers Section, Printing Industries Association of Kansas City, any employer, the Union nor the Trustees of the Trust, individually or collectively, shall be liable for any claim for benefits by an employee or his/her dependents or assignee; provided, however a delinquent employer

22

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 90

who is bound by the provisions of this agreement shall be liable
for any claim for benefits by his employees arising during the
term of this agreement not payable by the Trust or insurance
carrier solely by reason of the failure of that employer to
pay premiums as required herein.

## Article 31 - SEVERANCE PAY

In the event of the sale or suspension of business
on the part of the Party of the First Part, it is agreed
that severance pay to the extent cf two (2) full weeks
wages shall be paid to all pressroom employees who lose
their employment by such sale, consolidation or suspension.

## Article 32 - CATASTROPHE

There shall be no obligation on the part of the
Employer where inability to provide work caused by fire,
flood, earthquake, windstorm, riot, explosion or threat
cf an explosion.  In the event of a disruption in utility
service the Employer shall be obligated to notify the
Employees scheduled for other shifts not to report to work.
Any Employee who is not notified of the disruption in
utility service and reports to work for his or her regular
shift is entitled to 2 hours pay.  The shift working when
the catastrophe occurs shall receive no less than 5 hours
pay.  It is the Employee's responsibility to have correct
telephone number available to the Company and the Union
at all times.

## Article 33 - SEPARABILITY

It is further understood by both parties to this
agreement that any clauses or parts thereof found to be
in violation of any United States Laws shall be striken
therefrom.

## Article 34 - VACATIONS

All pressroom employees who have continuous service
with the same employer, as of the beginning of the contract
year shall receive paid vacations as follows:

Effective November 1, 1976:

1. Employees with one year and less than two years

    (a) who have worked 220 days - 10 working days
        to be taken as two consecutive weeks or one
        week at a time

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.
EXHIBIT 2 to COMPLAINT - 91

          (b) who have worked less than 220 days - 1/26th
             of a day's vacation pay for each day worked

2.  Employees with two or more years

        (a) who have worked 220 days - 15 working days
        (b) who have worked less than 220 days - 1/17th
           of a day's vacation pay for each day worked

          SAID THIRD WEEK VACATION SHALL BE
           TAKEN IN THE FOLLOWING MANNER:

        (a) consecutively with the first two weeks
        (b) cash at straight time rates in lieu of time,
           or at any time during the contract year by
           mutual agreement.

3.  4 weeks vacation - Employees with 10 or more years
    service with the same Employer.

IF A MEMBER HAS TIME IN AS OF OCTOBER 31, HE WILL BE
    ELIGIBLE FOR VACATION IN THE FOLLOWING YEAR:

        (a) who have worked 220 days - 20 working days
        (b) who have worked less than 220 days - 1/13th
           of a day's vacation pay for each day worked
        (c) The fourth week vacation shall be taken one
           day or more at a time during the contract
           year or may be paid in lieu of time off by
           mutual consent.

4.  Employees permanently leaving the firm

        (a) with one year and less than two years -
           1/26th of a day's vacation pay for each day
           worked
        (b) with two or more years - 1/17th of a day's
           vacation pay for each day worked
        (c) with 10 or more years - 1/13th of a day's
           vacation pay for each day worked.

5.  Any Employee who has been employed on the night
    shift at least 75 nights during the contract year
    shall receive night shift pay for his or her
    vacation.

    Vacation schedule will be posted January 1st, of each
year.  Length of service will be used in determining the
selection of vacation time.

    In the event of a conflict in the scheduling of the
first two weeks vacation, the Foreman and the Union Business
Agent shall resolve the problem by mutual consent with
Top Management.

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.             EXHIBIT 2 to COMPLAINT - 92

Paid holidays and vacations within the period worked, time lost while serving on negotiating committees, grievance committees or other committees serving either the Employer or the Union in matters relating to both, the time lost because of illness or injury (maximum - 20 weeks) which shall be substantiated by a physician acceptable to the Employer, shall be added to days actually worked in figuring vacation pay. Vacation rate shall be that in effect at the time the vacation is taken. Vacation money shall be paid when vacation starts.

Extra Employees shall be paid 1/26th of a day's vacation pay for each day worked.

However, Employees shall not accumulate vacation credits for service connected with military tours of duty (either as an enlisted man or a draftee). It is agreed, however, that when an Employee enters military service (as a draftee or as a volunteer) he shall not forfeit his continuous service with the Employer and all time served in the service (up to 4 years, but if time is extended by the U. S. Government, this time shall be added to the 4 years) shall be added to his continuous service time with the Employer. Upon returning to his regular employment (in the required time) he will receive vacation as provided for in this Article.

It is further understood when the Union cannot furnish a competent substitute worker, that vacation credits may be paid in cash and the Employee remain on his job during the vacation period.

In the event for any reason the Employee permanently leaves the employ of the office, he shall be reimbursed in cash for the vacation time accumulated.

In the event a holiday or holidays occur in a member's vacation period, it shall be understood that the holiday or holidays shall not be considered a part of said vacation and members shall be required to take the first work day of the following week or the last day of the preceding week.

## Article 35 - BEREAVEMENT

When there is a death in an Employee's family, (parent, spouse, brother, sister, child, grandparent, grand-child, step-child, step-parent, spouse's parent or step-parent) he shall receive a maximum of two days pay while absent from his situation consisting of the day of the funeral and either the day before or the day after the funeral.

EXHIBIT 2 to COMPLAINT - 93

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

## Article 36 - RETIREMENT FUND

Commencing as of November 1, 1963 the Employer shall contribute monthly to the Graphic Communications International Union-Employer Retirement Fund the sum of seventy-five cents (75¢) per straight time shift's pay earned for each Employee covered by this Contract.

Said contributions shall be made in the manner prescribed by the Retirement Fund Committee.

Effective January 1, 1969, the Employers contribution is increased to $1.00 per straight time shift.

Additional increases:
Effective - May 1, 1972........$1.25 per shift
            December 1, 1973... 1.50 per shift
            November 1, 1975... 1.75 per shift
            December 20, 1976.. 2.00 per shift
            November 1, 1977... 2.25 per shift
            November 1, 1978... 2.50 per shift
            November 1, 1979... 2.75 per shift
            November 1, 1980... 3.00 per shift
            May 1, 1982........ 4.00 per shift
            May 1, 1983........ 5.00 per shift
            May 1, 1984........ 6.00 per shift
            May 1, 1992........ 6.50 per shift
            May 1, 1993........ 7.00 per shift

The triplicate form on payments to the Fund is to be sent to Local 16-C office.

## Article 37 - JOINT APPRENTICESHIP COMMITTEE

The Joint Apprenticeship Committee consisting of three (3) representatives of the Union Employers Section, Printing Industries Association of Kansas City and three (3) representatives of Kansas City Graphic Communications Union Local Number 16-C. shall have full power and authority to administer and supervise the apprentice provisions of this Agreement.  If an apprentice or employer feels that the Agreement has not been observed, and that he has not been able to obtain satisfaction, he may appeal to the Committee for disposition.  The decisions of the Committee shall be by majority vote.  In the event of the inability of the Committee to reach a decision satisfactory to the Apprentice and the Employer, the matter shall be referred to the Joint Standing Committee.

26

RATIO OF APPRENTICES:

Journeyman Pressman and Plate Preparation Department

| Pressman | | Apprentices |
|---|---|---|
| 4 | tc | 1 |
| 8 | to | 2 |
| 12 | to | 3 |

All Apprentices shall be given the same protection and benefits as Journeymen, and shall be governed by the same shop rules, working conditions, and hours.

It is understood that an Apprentice shall not be required to do regular janitor work or run errands, except in cases of an emergency.

No Apprentice shall be employed overtime unless the number of Journeymen working overtime on the same shift equals the ratio prescribed in the Agreement. Except to finish the run. Not to exceed 2 hours.

In the event it becomes necessary to reduce the force, Apprentices shall be laid off whenever the ratio of Apprentices would otherwise exceed that called for in the Agreement.

No Apprentice shall leave one Employer and enter the service of another Employer without the written consent of his first Employer and the consent of the Joint Apprenticeship Committee.

At the completion of the Apprenticeship period and upon promotion to Journeyman status, the Apprentice shall be placed at the bottom of the seniority list of his card classification. When there are night shifts, members working nights will have preference of day work over the Apprentice just finishing Apprenticeship term.

There shall be nothing in the Apprenticeship Agreement to prohibit an applicant who has served three or more years as a Journeyman Press Assistant who shall qualify as a Pressman for a period of ninety (90) days, and who shall for that period receive the Journeyman Pressman scale, shall upon concurrence of the Committee be approved as eligible for a certificate of completion of Apprenticeship, provided the applicant has completed the course in printing required by the International Union.

WAGES AND ACTIVITIES PERMITTED BY PRESSROOM APPRENTICES:

First 3 months - 45% of Journeyman Offset Assistants scale on two color 30½" up to and including 45".

Second 3 months – 60% of the above mentioned scale, general training work in the press and/or plate department.

Third 3 months – 70% of above mentioned scale, may feed presses, and do other general work in the press and/or plate department.

Fourth 3 months – 80% of above mentioned scale, may feed presses, and do other general work in the press and/or plate department.

3rd 6 months – 90% of above mentioned scale, may feed presses and do other general work in the press and/or plate department.

4th 6 months – becomes Journeyman Offset Assistant, or can start as an Apprentice Pressman at 85% of Journeyman Offset Pressman scale, may run one Offset Press 11 x 17 or under.

5th 6 months – 87½% of Journeyman Offset Pressman scale, may run one Offset Single Color Press 24" or under.

6th 6 months – 90% of Journeyman Offset Pressman scale, may run the Offset Press 29" or under.

7th 6 months – 92½% of Journeyman Offset Pressman scale, may run any piece of equipment, except at no time shall an Apprentice have charge of a department or supervision over a Journeyman and shall not be allowed to run a 2-color or be 1st Pressman on Multicolor Presses until after completion of Apprenticeship program.

8th 6 months – 95% of Journeyman Offset Pressman scale, may run any piece of equipment, except at no time shall an Apprentice have charge of a department or supervision over a Journeyman and shall not be allowed to run a 2-color or be 1st Pressman on Multicolor Presses until after completion of Apprenticeshp program.

### WAGES AND ACTIVITIES PERMITTED BY OFFSET PREPARATORY PLATE DEPARTMENT APPRENTICES

The wages of an Apprentice employed in the Offset preparatory Plate Department permanently or who works fifty (50) percent or more in this Department, shall be pro-rated on the Offset Stripper's prevailing wage. During his apprenticeship he shall be trained in all phases of the Department.

### WAGES PRO-RATED OVER A FOUR-YEAR PERIOD

1st 3 months – 45% of Offset Stripper prevailing wage rate.

28

2nd 3 months - 55% of the Offset Stripper prevailing wage rate.

3rd 3 months - 60% of the Offset Stripper prevailing wage rate.

4th 3 months - 65% of the Offset Stripper prevailing wage rate.

3rd 6 months - 70% of the Offset Stripper prevailing wage rate.

4th 6 months - 75% of the Offset Stripper prevailing wage rate.

5th 6 months - 80% of the Offset Stripper prevailing wage rate.

6th 6 months - 85% of the Offset Stripper prevailing wage rate.

7th 6 months - 90% of the Offset Stripper prevailing wage rate.

8th 6 months - 95% of the Offset Stripper prevailing wage rate.

An Apprentice completing the 6th six months period may be placed on the position that is to be his permanent work, providing the full complement of Journeymen are employed.

At the end of the 8th six months he shall be paid the prevailing wage of the job classification of his work, but he starts at the bottom of the seniority list.

## Article 38 - DELINQUENT LIABILITY

Companies failing to forward payroll dues deductions to the Union within thirty (30) days from the 15th of the month such deductions were payable to the Union, shall be delinquent and in violation of this Agreement.

In the event the Company fails to make payment within thirty (30) days, the Company shall be notified by certified mail by the Union of the Contract violation. The Company shall have one calendar week after receipt of such notification to make full payment. If full payment is not forthcoming, interest on all monies shall be as liquidated damages owed at the rate of one-half ($\frac{1}{2}$) percent per month on the unpaid balance until paid. The Union shall have the right to take whatever legal action they deem necessary to collect payment and the Company shall

29

be liable for expenses, including reasonable Attorney's fees, incurred by the Union in taking such action.

The Union shall also have the right to require any Company delinquent to post a bond which will guarantee payments required by this Agreement and be used for no other purpose.

## Article 39 - ENERGY CRISIS

In the event the Federal Government declares an energy crisis in this area and makes it impossible for all shops to operate their normal work week the available work will be equally divided among all regular Employees regardless of shifts.

Scheduling of hours will be worked out with the Union, and overtime pay will not start until $37\frac{1}{2}$ hours have been worked.  This does not exclude double time after 4 hours on Saturday, Sunday or Holiday.

## Article 40 - UNIFORMS

If the Company makes the wearing of uniforms mandatory, the Company will pay the full cost of such uniforms.

## Article 41 - DISCUSSION MEETING CLAUSE

The parties hereto reserve the right to re-open the Contract regarding any future agreements that are thought to be more favorable which may be reached with a competitive union company of comparable size and like equipment. Discussion shall be confined to the provision or provisions that are deemed more favorable and any decision to modify this Agreement shall be contingent upon ratification by the affected members of Kansas City Graphic Communications Union Local Number 16-C.  This clause will be deleted at the end of Contract - April 30, 1995.

## Article 42 - DUES CHECK OFF

(a) The Company agrees that upon the receipt of written authorization in the form attached hereto, the Company will deduct Union Dues each week in the amount specified in said authorization, and transmit same to the Union, no later than the 15th of the following month.

(b) Such authorization shall not be revocable for a period of one year or until the termination date of the Contract, whichever is earlier, and the revocation shall

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 98

not be effective until fifteen (15) days after written
notice thereof has been given to the Company.

(c) It is expressly understood that the Company shall
assume no liability in connection with the voluntary
deductions of Employees dues, and all disputes and
adjustments shall be matters to be settled between the
Union and the Employee involved.

Sample<br>
of<br>
CHECK OFF AUTHORIZATION

I HEREBY AUTHORIZE _____
TO DEDUCT FROM MY WAGES THE MONTHLY UNION DUES IN THE AMOUNT
OF 1.65% OF REGULAR STRAIGHT TIME WAGES EACH WEEK HEREAFTER
AS MEMBERSHIP DUES OWED BY ME TO KANSAS CITY GRAPHIC
COMMUNICATIONS UNION NO. 16-C AND TO PAY THE AMOUNT DEDUCTED
TO THE FINANCIAL SECRETARY OF SUCH LOCAL UNION MONTHLY,
BY THE 15TH OF THE FOLLOWING MONTH.  IT IS MY INTENTION
THAT THIS AUTHORIZATION SHALL IRREVOCABLY REMAIN IN EFFECT
FOR A PERIOD OF ONE YEAR FROM SAID DATE OR UNTIL THE
TERMINATION OF THE CURRENT COLLECTIVE BARGAINING AGREEMENT
BETWEEN THE COMPANY AND THE UNION, WHICHEVER OCCURS SOONER;
AND SHALL REMAIN IN FULL FORCE AND EFFECT FROM YEAR TO
YEAR OR FOR THE PERIOD OF EACH SUCCEEDING APPLICABLE
COLLECTIVE BARGAINING AGREEMENT BETWEEN THE COMPANY AND
THE UNION, WHICHEVER SHALL BE SHORTER, UNLESS DURING THE
FIFTEEN DAY PERIOD IMMEDIATELY PRIOR TO ANY ANNIVERSARY
DATE OF THIS AUTHORIZATION, OR OF EACH APPLICABLE COLLECTIVE
BARGAINING AGREEMENT BETWEEN THE COMPANY AND THE UNION,
WHICHEVER OCCURS SOONER, I, IN WRITING NOTIFY THE COMPANY
OF MY DESIRE TO REVOKE THIS AUTHORIZATION.

_____    _____    _____
EMPLOYEE SIGNATURE          WITNESS - AUTHORIZED            DATE
                            REPRESENTATIVE OF UNION

NOTE EMPLOYER:

1.65% OF REGULAR STRAIGHT TIME WAGES EACH WEEK INCLUDES:
    NIGHT SHIFT PAY      HOLIDAY PAY
    FOREMAN PAY          VACATION PAY

EMPLOYER COPY - WHITE
UNION COPY - YELLOW

**MEMBERS OF THE
UNION EMPLOYERS SECTION PRINTING INDUSTRIES ASSOCIATION
OF KANSAS CITY**

Constable-Hodgins Printing Company
The Lowell Press
Schifman Printing Company
Web-Con Printing

**COMPANIES AGREEING TO SAME CONTRACT,
BUT NOT MEMBERS OF
UNION EMPLOYERS SECTION PRINTING INDUSTRIES ASSOCIATION
OF KANSAS CITY**

Beacon Press
Consumers Printing, Inc.
Callenders Pressroom Printing Company
Damar Printing Company
Harmony Printing Company
Lees Printing Company, Inc.
Litho II
Pre Press Graphic Professionals
McGinnis Printing Company
Medley Brothers Printing Company
S O S Printing Company

32

Signed this ___5___ day of ___August___, 1992.

| UNION EMPLOYERS SECTION PRINTING INDUESTRIES ASSOCIATION OF KANSAS CITY | KANSAS CITY GRAPHIC COMMUNICATIONS UNION LOCAL NUMBER 16-C |
|---|---|
| (Party of the First Part) | (Party of the Second Part) |

By _____
    Payson W. Lowell, Chairman

By _____
    Kurt Payton, President

By _____
    Raymond J. Campbell

By _____
    N. Eugene Gulick,
    Secretary-Treasurer
    Business Representative

This Agreement has been made with the consent and approval of the Graphic Communications International Union, which undertakes to guarantee the fulfillment of the conditions hereinbefore set forth except that the Graphic Communications International Union assumes no liability hereunder for the work stoppages or breaches of this Contract unless said Graphic Communications International Union actually authorizes, ratifies and actively participates in said work stoppages or breaches of this Agreement.

Approved this _____

By _____
   James Norton, International President
   Graphic Communications International Union

33



## Kansas City Graphic Communications Union
## Number Sixteen-C
### Subordinate to G.C.I.U.

SUITE 304, SCARRITT BUILDING

818 GRAND AVENUE

**EUGENE GULICK**
SECRETARY-TREASURER
BUSINESS REPRESENTATIVE

KANSAS CITY, MO. 64106

MEETS FOURTH TUESDAY OF EACH MONTH

**KURT PAYTON**
PRESIDENT

NOV 16 1992

RECEIVED

### SUPPLEMENT

In consideration of the benefits mutually to be derived and other good and valuable considerations, the undersigned Employer, although not a member of the UNION EMPLOYERS SECTION, PRINTING INDUSTRIES ASSOCIATION OF KANSAS CITY, and although it has not authorized the UNION EMPLOYERS SECTION, PRINTING INDUSTRIES ASSOCIATION OF KANSAS CITY to represent it in the matter of negotiation and execution of collective bargaining agreements, does hereby adopt, accept, assume and enter into that certain agreement made and executed on <u>May 1, 1992</u>, by and between the UNION EMPLOYERS SECTION, PRINTING INDUSTRIES ASSOCIATION OF KANSAS CITY, and the KANSAS CITY GRAPHIC COMMUNICATIONS UNION NO. 16-C, a copy of which such agreement, marked Exhibit "A", is hereto attached and by reference made a part hereof, and does hereby agree to comply with and to be bound by the various provisions of the same as fully as if the said undersigned Employer has been one of the original signatory parties hereof.

In like manner, the undersigned Union with respect to the undersigned Employer, does hereby also adopt, accept, assume and enter into the aforementioned agreement and agree to comply with and be bound by the provisions thereof.

Dated for the undersigned Employer this <u>15</u> day of <u>June</u>, 199<u>2</u>.

<u>Pre Press Graphic Professionals</u>      By <u>Kurt Hulick    President</u>
Name of Employer                              Name       Title

Dated for the Union this <u>15</u> day of <u>June</u>, 199<u>2</u>.
<u>KANSAS CITY GRAPHIC COMMUNICATIONS UNION NO. 16-C</u>

By <u>N. Eugene Hulick</u>      By <u>Kurt Payton</u>
   N. Eugene Gulick               Kurt Payton, President
   Secy-Treas. Bus. Repr.

opeiu#320afl-cio

GCIU-Employer Retirement Fund, et al. v. Prepress Graphic Professionals, Inc.

EXHIBIT 2 to COMPLAINT - 102

# EXHIBIT 3

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 3 to COMPLAINT - 103



# GCIU - Employer Retirement Fund

### Newspaper, Commercial Printing, and Printing Specialties & Paper Products Industries

2323 Eastlake Ave E Seattle WA 98102 • (800) 322-1489 • Formerly IP&GCU-Employer Retirement Fund

March 4, 2019

Pre-Press Graphic Professionals
c/o Dan Distler
10907 W. 70th Ter
Shawnee, KS  66203

**Via Registered Mail**

Re:   Notice of 2010 Complete Withdrawal Liability and Demand for Payment
**Pre-Press Graphic Professionals (7081)**

Dear Mr. Distler:

We understand that Pre-Press Graphic Professionals has withdrawn from participation in the Plan, thus effectuating a complete withdrawal from the GCIU-Employer Retirement Fund ("Fund") as defined by Section 4203 of the Employee Retirement Income Security Act ("ERISA"). Please allow this letter to serve as a formal notice of withdrawal liability and demand for payment as required by ERISA Section 4219.

In accordance with ERISA and the Fund's Withdrawal Liability Procedures, the Fund's actuaries determined that the withdrawal liability attributable to Pre-Press Graphic Professionals is $421,514. Detail regarding the calculation is set forth on Exhibits 1 through 3 enclosed with this letter. A payment schedule as required by ERISA Section 4219(c) is set forth on Exhibit 2 enclosed with this letter. Demand is hereby made that Pre-Press Graphic Professionals make payments in accordance with the enclosed schedule.

You may either make payment in accordance with the enclosed monthly payment schedule or in a lump sum. Exhibit 2 shows the calculation of the monthly payment amount as well as the starting and ending payment dates.

You may also choose to make a lump sum, present value payment. The present value of 240 monthly payments of $1,208.99 is $199,912 (rather than the full assessment of $421,514). Please be advised that Pre-Press Graphic Professionals can elect to pay the present value of the withdrawal liability assessment by remitting payment in the amount of $199,912 within 60 days from the date of this letter.

Pre-Press Graphic Professionals
c/o Dan Distler
March 4, 2019
Page 2


If you choose to make monthly payments, you may still satisfy your obligation with a lump sum payment at a future date. The present value will be calculated based on remaining payments at that time.

Please be advised that by accepting payment in the form of a lump sum, the Fund is in no way waiving its rights and obligations under ERISA Sections 4041A and 4219(c)(1) to reassess withdrawal liability to Pre-Press Graphic Professionals in the event of a "mass withdrawal."

Any request for review or objection to the assessment pursuant to ERISA Section 4219(b)(2), must be made within 90 days of receipt of this notice and demand. Please also note the time restrictions imposed by ERISA Section 4221 regarding arbitration apply to this withdrawal liability assessment and demand. This letter is intended as notice of withdrawal liability and demand for payment to all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations promulgated thereunder.

**Finally, please note that this notice of assessment is based on the Fund's understanding that Pre-Press Graphic Professionals does not have any other contributing affiliates to the Plan. If the Fund's understanding is not correct, you must notify the Fund immediately with the names and addresses of these other contributing employer groups so that the Fund can review the information for a possible correction to this assessment.**

Should you have any questions or comments, please do not hesitate to contact us.


Sincerely,

*Douglas D. Wisman*

Douglas D. Wisman
Compliance Manager for Administrator


Enclosures
cc:     GCC/IBT Local 16-C

Exhibit 1

**GCIU - Employer Retirement Fund**
**Withdrawal Liability for 2010 Withdrawals**
**Calculation Details for Complete Withdrawal**

Employer :    PRE-PRESS GRAPHIC PROFESSIONALS

**(1) Input Data for Plan**

| (a) Plan Year End | (b) UVB as of year end | (c) Initial UVB Pool | (d) Reallocated UVB during year |
|---|---|---|---|
| 12/31/2006 | 497,927,455 | 497,927,455 | N/A |
| 12/31/2007 | 532,740,964 | 59,709,882 | 672,172 |
| 12/31/2008 | 983,980,380 | 479,121,282 | 6,091,905 |
| 12/31/2009 | 931,017,601 | (1,124,848) | 30,232,033 |

(b)   Unfunded Vested Benefits as of the end of the Plan Year, reduced by outstanding expected withdrawal liability payments
      for withdrawals prior to 2006. The most recent UVB includes an adjustment for affected benefits from the rehabilitation plan.
(c)   Excess of UVB over the sum of unamortized UVB pools for prior years, determined as of plan year end.
(d)   Amounts determined during the year by the plan sponsor to be uncollectible or unassessable for withdrawals in 2006 and later.

**(2) Input Data for Employer and Plan**

| (a) Plan Year End | (b) Employer | (c) All Employers | (d) Pre 2007 Withdrawn Employers | (d) Pre 2008 Withdrawn Employers | (d) Pre 2009 Withdrawn Employers | (d) Pre 2010 Withdrawn Employers |
|---|---|---|---|---|---|---|
| | | | Contributions during the year | | | |
| 12/31/2002 | 8,658 | 23,327,969 | 1,695,247 | N/A | N/A | N/A |
| 12/31/2003 | 8,360 | 22,900,347 | 1,088,060 | 1,531,814 | N/A | N/A |
| 12/31/2004 | 9,432 | 24,202,951 | 1,867,330 | 2,331,665 | 2,989,035 | N/A |
| 12/31/2005 | 9,360 | 23,235,360 | 1,842,352 | 2,269,779 | 2,861,981 | 3,846,420 |
| 12/31/2006 | 8,667 | 22,889,552 | 2,051,609 | 2,476,837 | 2,962,466 | 3,929,987 |
| 12/31/2007 | 8,712 | 22,954,629 | N/A | 2,995,303 | 3,268,839 | 4,256,407 |
| 12/31/2008 | 8,646 | 20,606,125 | N/A | N/A | 1,370,288 | 2,399,102 |
| 12/31/2009 | 8,653 | 17,536,547 | N/A | N/A | N/A | 1,755,288 |

(b)   Contributions for employer under controlled group definition, including all locations.
      Calculation will change if other participating locations of the employer are later identified.
(c)   As reported on the IRS Form 5500, Schedule B.
(d)   Includes all withdrawal liability payments, and contributions from employers that withdrew
      in a complete withdrawal before the year indicated.

**(3) Determination of Allocated Liability by Plan Year**

| (a) Plan Year End | (b) Unamortized Percent | (c) Unamortized UVB Pool | (d) Unamortized Reallocated Pool | (e) Employer | (f) All Employers | (g) Withdrawn Employers | (h) Allocated Liability |
|---|---|---|---|---|---|---|---|
| | | | | Contributions during prior five year period | | | |
| 12/31/2006 | 85% | 423,238,337 | 0 | 45,477 | 116,566,199 | 8,524,598 | 176,150 |
| 12/31/2007 | 90% | 53,738,894 | 604,955 | 45,531 | 116,192,859 | 11,605,398 | 23,658 |
| 12/31/2008 | 95% | 455,165,218 | 5,787,310 | 44,817 | 113,898,637 | 13,432,609 | 205,627 |
| 12/31/2009 | 100% | (1,124,848) | 30,232,033 | 44,038 | 107,232,233 | 16,187,202 | 14,079 |
| Sum | | 931,017,601 | 36,624,298 | | | | 421,514 |

(b)   5% of original amount amortized each year.
(c)   Unamortized portion of the Initial UVB Pool: (b) x Initial UVB Pool for the year.
(d)   Unamortized portion of the Reallocated UVB: (b) x Reallocated UVB for the year.
(e) - (g)   Sum of amounts from current plan year and 4 prior plan years.
(h)   Calculated as [ (c) + (d) ] x (e) / [ (f) - (g) ]

**(4) Withdrawal Liability Calculation**

| | | |
|---|---|---|
| (a) Preliminary Withdrawal Liability Assessment: sum of 3h | $ | 421,514 |
| (b) Reduction for De Minimis Rule under ERISA Section 4209<br>Up to $50,000, reduced to $0 as (3a) increases from $100,000 to $150,000 | $ | - |
| (c) Net Withdrawal Liability ((4a) - (4b)) | $ | 421,514 |

GCIU2010-WL-PrePress Graphics.xls

08/23/2012

Exhibit 2

**GCIU - Employer Retirement Fund**
**Withdrawal Liability for 2010 Withdrawals**
**Calculation and Schedule for Withdrawal Payments**

**(1) Input Data for Employer**

| | | | |
|---|---|---|---|
| (a) Name | | | PRE-PRESS GRAPHIC PROFESSIONALS |
| (b) Withdrawal Liability Assessment | | $ | 421,514 |
| (c) Contribution Base Units (Shifts) | 2000 | | 1,305.00 |
| | 2001 | | 1,330.00 |
| | 2002 | | 962.00 |
| | 2003 | | 1,040.00 |
| | 2004 | | 1,048.00 |
| | 2005 | | 1,040.00 |
| | 2006 | | 881.59 |
| | 2007 | | 792.00 |
| | 2008 | | 786.00 |
| | 2009 | | 780.22 |
| (d) Contribution Rate (Shifts) | 2001 | $ | 9.00 |
| Highest of any Group, by Year | 2002 | | 9.00 |
| | 2003 | | 9.00 |
| | 2004 | | 9.00 |
| | 2005 | | 9.00 |
| | 2006 | | 9.83 |
| | 2007 | | 11.00 |
| | 2008 | | 11.00 |
| | 2009 | | 11.09 |
| | 2010 | | 12.10 |

**(2) Calculation of Monthly Payment Amount**

| | | |
|---|---|---|
| (a) Highest 3-Year Average Contribution Base Units in 10 Years Preceding Year of Withdrawal | | 1,199 |
| (b) Highest Contribution Rate in 10 Years Ending with Year of Withdrawal | $ | 12.10 |
| (c) Annual Payment Amount ((2a) * (2b)) | $ | 14,507.90 |
| (d) Monthly Payment Amount ((2c) / 12) | $ | 1,208.99 |

**(3) Duration of Monthly Payments**

| | | |
|---|---|---|
| (a) Interest Rate | | 8.00 % |
| (b) Number of Years for Full Annual Payment in Amortization of Withdrawal Liability Assessment ((1b) amortized with payments of (2c) at 8.0% interest, excluding partial years, limit 20 years) | | 20 |
| (c) Unamortized Amount at the Beginning of the Final Payment Year ((1b) increased with interest to final payment year, less full annual payments accumulated with interest) | $ | - |
| (d) Number of Full Monthly Payments in Final Year | | - |
| (e) Total Number of Full Monthly Payments ((3b)*12 + (3d)) | | 240 |
| (f) Initial Payment Date | | January 1, 2011 |
| (g) Final Payment at Full Monthly Amount | | December 1, 2030 |
| (h) Final Partial Payment Date | | - |
| (i) Payment Amount at Final Partial Payment Date | $ | - |

GCIU2010-WL-PrePress Graphics.xls

08/23/2012

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 3 to COMPLAINT - 107

Exhibit 3

GCIU - Employer Retirement Fund
Withdrawal Liability Calculation
Backup Data

PRE-PRESS GRAPHIC PROFESSIONALS

| | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Contributions (Data Provided) 7091 PRE-PRESS GRAPHIC PROFESSIONALS | 9,240.00 | 9,795.00 | 11,745.00 | 11,970.00 | 8,608.00 | 9,360.00 | 9,432.00 | 9,395.00 | 8,967.00 | 8,712.00 | 8,646.00 | 8,452.00 | 6,279.90 | - |
| Total | 9,240.00 | 9,795.00 | 11,745.00 | 11,970.00 | 8,608.00 | 9,360.00 | 9,432.00 | 9,395.00 | 8,967.00 | 8,712.00 | 8,646.00 | 8,452.00 | 6,279.90 | - |
| Shift Rate (Data Provided) 7091 PRE-PRESS GRAPHIC PROFESSIONALS | 7.09 | 7.51 | 9.00 | 9.00 | 9.00 | 9.00 | 8.00 | 8.00 | 9.03 | 11.00 | 11.00 | 11.00 | 12.10 | - |
| Total (calculated) Highest Rate | 7.09 | 7.51 | 9.00 | 9.00 | 9.00 | 9.00 | 9.00 | 8.00 | 9.03 | 11.00 | 11.00 | 11.00 | 12.10 | - |
| | | | | | | | | | | | | | | |
| Total Three Year Average | 1,303.24 | 1,304.28 1,304.17 | 1,305.00 1,313.08 | 1,330.00 1,190.00 | 942.00 1,110.67 | 1,040.00 1,016.67 | 1,048.00 1,042.57 | 1,040.00 864.00 | 861.00 804.80 | 792.00 804.58 | 786.00 819.00 | 790.12 798.87 | 518.65 805.07 | 435.87 |
| Hours (Data Provided) 7091 PRE-PRESS GRAPHIC PROFESSIONALS | 9,773.00 | 9,795.00 | 9,795.00 | 9,680.00 | 7,218.00 | 7,810.00 | 7,856.00 | 7,816.00 | 8,814.00 | 5,953.00 | 5,961.00 | 5,653.00 | 3,984.00 | - |
| Total | 9,773.00 | 9,795.00 | 9,795.00 | 9,680.00 | 7,218.00 | 7,810.00 | 7,856.00 | 7,816.00 | 8,814.00 | 5,953.00 | 5,961.00 | 5,653.00 | 3,984.00 | - |
| Average Hours per Shift 7091 PRE-PRESS GRAPHIC PROFESSIONALS | 7.50 | 7.50 | 7.50 | 7.29 | 7.50 | 7.51 | 7.50 | 7.52 | 7.50 | 7.50 | 7.51 | 7.50 | 7.50 | - |
| Hours per Shift (History provided) 7091 PRE-PRESS GRAPHIC PROFESSIONALS | - | - | - | - | - | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | - |

GCR/2010-WL-PrePress Graphics.xls

**USPS Tracking**® FAQs ❭ (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** RF156254159US                                    Remove ✕

**Expected Delivery on**

# THURSDAY

# 14 MARCH 2019 ⓘ    by 8:00pm ⓘ

⊘ **Delivered**

March 14, 2019 at 12:35 pm
Delivered, Left with Individual
SHAWNEE, KS 66203

Get Updates ⌄

Feedback

---

**Text & Email Updates**

---

**Tracking History**

---

**Product Information**

---

**UNITED STATES POSTAL SERVICE**®

**Registered Mail Receipt**

Date Stamp

BROADWAY
MAR ~ 5 2019

| Post Office: Complete section. | Postage | Return Receipt ✕ |
| | Registered Fee | Restricted Delivery |
| | Handling Charge | Special Delivery |
| | Total Postage and Fees | Received by |

Declared Value
$

Declare full value of contents at the time of mailing. Maximum amount of insurance coverage available is $25,000. Fees for articles valued over $25,000 are for handling only. You must declare domestic claims within one year of mailing and international claims within six months.

FROM: (Name, no., street, ste./apt. no., city, state, ZIP + 4)
Northwest Administrators, Inc.
Attn: Doug Wishman, Compliance Mgr.
2323 Eastlake Ave. East, 4th Floor
Seattle, WA 98102

TO: (Name, no., street, ste./apt. no., city, state, ZIP + 4)
Pre-Press Graphic Professionals
c/o Dan Distler
10907 W. 70th Ter
Shawnee, KS 66203

**Customer:** Print in ballpoint pen or type

RF156254159US

PS Form 3806, June 2000                    1-Customer   2 - Post Office

EXHIBIT E to COMPLAINT

# EXHIBIT 4

GCIU-Employer Retirement
Fund, et al. v. Prepress Graphic
Professionals, Inc.

EXHIBIT 4 to COMPLAINT - 110



# GCIU - Employer Retirement Fund

**Newspaper, Commercial Printing, and Printing Specialties & Paper Products Industries**

2323 Eastlake Ave E Seattle WA 98102 • (800) 322-1489 • Formerly IP&GCU-Employer Retirement Fund

June 10, 2019

Mr. Jack Gulick
Pre-Press Graphic Professionals
14317 W. 56th Place
Shawnee, KS 66216-4673

<u>**VIA CERTIFIED MAIL**</u>
#7000-0600-0026-6636-1382

Re:    **Notice of Failure to Pay Withdrawal Liability and Demand for Cure
       Pre-Press Graphic Professionals (7081)**

Dear Mr. Gulick:

Please allow this letter to serve as a notice of failure to pay withdrawal liability and demand for cure
in accordance with Section 4219(c)(5) of the Employee Retirement Income Security Act ("ERISA").

By letter dated April 2, 2019, the GCIU-Employer Retirement Fund ("Fund") provided a formal
notice of withdrawal liability and demand for payment. The letter enclosed a payment schedule.
According to our records, Pre-Press Graphic Professionals has not remitted any of its withdrawal
liability payments to the Plan.

Please be advised if payment in accordance with the schedule is not made in full within 60 days of
your receipt of this letter, Pre-Press Graphic Professionals will be in default of its withdrawal liability
assessment. Should that occur, the entire assessment and interest shall be immediately due.

This notice and demand for cure is intended as notice and demand to Pre-Press Graphic Professionals
and all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations
promulgated thereunder.

Thank you for your attention to this issue. Should you have any questions or comments, please do
not hesitate to contact me.

Sincerely,

*Douglas D. Wisman*

Douglas D. Wisman
Compliance Manager for Administrator

# USPS Tracking® FAQs > (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** 70000600002666361382                    Remove ✕

Your item was delivered at 5:24 pm on June 26, 2019 in SHAWNEE, KS 66226.

## ✓ Delivered

June 26, 2019 at 5:24 pm
Delivered
SHAWNEE, KS 66226

Get Updates ⌄

---

Text & Email Updates                                                          ⌄

---

Tracking History                                                              ⌄

---

Product Information                                                           ⌄

Feedback

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Jack Gulick
Pre-Press Graphic Professionals
14317 W. 56th Place
Shawnee, KS 66216-4673

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   □ Agent
                               □ Addressee
B. Received by (Printed Name)    C. Date of Delivery
                                 6/26/19

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

JUN 26 2019

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
☒ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery (over $500)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Return Receipt for Merchandise
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7000 0600 0266 6361 1382

|| 9590 9402 4784 8344 4990 62 ||

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

Fund, et al. v. Prepress Graphic
Professionals, Inc.